UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEHMAN BROTHERS HOLDINGS, INC.,

Plaintiff,

v.

SCOTT HIROTA, JOHANNA HIROTA,
RAUL QUINTANA, ELOISA QUINTANA,
GEORGE GALANOUDES, BARRY
RUTSTEIN, SOHAN SAHOTA, ROBERT
SMITH, EQUITABLE TITLE OF
FLORIDA, INC., LANDAMERICA
FINANCIAL GROUP, INC. d/b/a
LANDAMERICA-GULFATLANTIC TITLE,
INTERLACHEN RESIDENTIAL                      Civil Action No.
MORTGAGE COMPANY, LLC, FRED N.
PASSARELLI, PASSARELLI & POTTS
APPRAISAL SERVICE, INC., LAWYERS
TITLE INSURANCE CORPORATION, and
nominal defendants UNKNOWN TENANTS
1-135, SUNSET BAY CLUB MEMBERS
ASSOCIATION, INC., UNKNOWN
SPOUSE OF GEORGE GALANOUDES,
UNKNOWN SPOUSE OF BARRY
RUTSTEIN, UNKNOWN SPOUSE OF
SOHAN SAHOTA, and UNKNOWN
SPOUSE OF ROBERT SMITH,

Defendants.

---

## COMPLAINT

Lehman Brothers Holdings, Inc. ("LBH") sues Scott Hirota, Johanna Hirota, Raul

Quintana, Eloisa Quintana, George Galanoudes, Barry Rutstein, Sohan Sahota, Robert

Smith, Equitable Title of Florida, Inc., LandAmerica Financial Group, Inc., d/b/a

LandAmerica-GulfAtlantic Title, and Interlachen Residential Mortgage Company, LLC (collectively, the "Acting Defendants"), Fred N. Passarelli, Passarelli & Potts Appraisal Service, Inc., Lawyers Title Insurance Corporation, and nominal defendants who may have a subordinate interest in the foreclosures of the properties described herein, and states:

1. The Acting Defendants induced and conspired to induce Lehman Brothers Bank, F.S.B. to fund millions of dollars in mortgage loans secured by properties worth a fraction of their sales prices. This scheme to defraud has left LBH, the parent company of Lehman Brothers Bank, F.S.B. and the assignee of the loans, with loans in default and grossly under-secured, causing it millions of dollars in damages.

2. This complaint brings claims in tort and contract, including counts for foreclosure of the mortgages, against the individual borrowers. Counts in tort and contract are also brought against non-borrower defendants.

## —PARTIES—

3. LBH is a Delaware corporation principally doing business in New York.

4. Defendant Scott Hirota is an individual residing in California.

5. Defendant Johanna Hirota is an individual residing in California.

6. Defendant Raul Quintana is an individual residing in California.

7. Defendant Eloisa Quintana is an individual residing in California.

8. Defendant George Galanoudes is an individual residing in California.

9. Defendant Barry Rutstein is an individual residing in California.

2

10.    Defendant Sohan Sahota is an individual residing in Minnesota.

11.    Defendant Robert Smith is an individual residing in California.

12.    Defendants Scott Hirota, Johanna Hirota, Raul Quintana, Eloisa Quintana, George Galanoudes, Barry Rutstein, Sohan Sahota, and Robert Smith ("Borrower Defendants") are individuals who obtained mortgage loans from Lehman Brothers Bank to purchase the following properties located in New Port Richey, Florida:

| Closing Date | Borrower Defendants | Property |
|---|---|---|
| February 13, 2004 | Scott & Johanna Hirota | 4150 Tonga Lane #701 |
| March 5, 2004 | Raul & Eloisa Quintana | 4124 Tonga Lane #802 |
| March 16, 2004 | George Galanoudes | 4127 Tonga Lane #1002 |
| March 16, 2004 | George Galanoudes | 4131 Tonga Lane #1001 |
| March 16, 2004 | George Galanoudes | 4135 Tonga Lane #1000 |
| March 22, 2004 | Barry Rutstein | 7314 Kauai Loop #1201 |
| March 22, 2004 | Sohan Sahota | 7245 Kauai Loop #1102 |
| March 22, 2004 | Sohan Sahota | 7241 Kauai Loop #1103 |
| April 29, 2004 | Robert Smith | 7242 Kauai Loop #600 |

13.    Defendant Equitable Title of Florida, Inc. ("Equitable Title") is a Florida corporation principally doing business at 179 N. Highway 27, Suite F, Clermont, Florida 34711.

14.    Defendant LandAmerica Financial Group, Inc., d/b/a LandAmerica GulfAtlantic Title ("LandAmerica"), is a Virginia corporation principally doing business at 101 Gateway Centre Parkway, Richmond, Virginia 23235-5153.    LandAmerica

regularly engages in business in Florida through its office operating as LandAmerica GulfAtlantic Title located at 4700 Millenia Blvd, Suite 220, Orlando, Florida 32839.

15.     Defendant Interlachen Residential Mortgage Company, LLC ("Interlachen"), is a dissolved Florida corporation incorporated in 2001 and voluntarily dissolved in 2005 with its principal place of business located at 200 E New England Avenue, Suite 200, Winter Park, Florida 32789.

16.     Defendant Passarelli & Potts Appraisal Service, Inc. ("Passarelli & Potts") is a Florida corporation principally doing business at 1380 Gene Street, Winter Park, Florida 32789.

17.     Defendant Fred N. Passarelli ("Passarelli") is a resident of Florida.  Passarelli is an appraiser and an officer of Passarelli & Potts.  Passarelli, or other employees of Passarelli & Potts, provided the false appraisals for all mortgage loan transactions involved in this lawsuit.

18.     Defendant Lawyers Title Insurance Corporation ("Lawyers Title") is a subsidiary of LandAmerica Financial Group, Inc., and regularly engages in business in Florida through its office located at 201 South Orange Avenue, Suite 1350, Orlando, Florida 32801.

### —JURISDICTION & VENUE—

19.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this controversy is between citizens of different states and the amount in controversy

exceeds $75,000, exclusive of interests and costs.    Complete diversity exists

between plaintiff and all defendants.

20.    Venue is proper in this district because the property that is the subject of the

action is situated in this district and a substantial part of the events or omissions

giving rise to the claims occurred in this district. *See* 28 U.S.C. § 1391(a).

—ALLEGATIONS COMMON TO ALL COUNTS—

**Lehman Brothers**

21.    Lehman Brothers Bank, F.S.B. ("Lehman Brothers Bank") is a federal savings

bank organized under federal law with its home office in Wilmington, Delaware

and its principal place of business in New York.

22.    Lehman Brothers Bank is a subsidiary of LBH.

23.    Lehman Brothers Bank originates mortgage loans and both Lehman Brothers

Bank and LBH engage in the purchase and sale of mortgage loans.

24.    Lehman Brothers Bank assigned to LBH all of its rights, claims, title, and

interests in the notes, mortgages and contracts at issue in this complaint.

**Sunset Bay**

25.    Sunset Bay Club ("Sunset Bay") is a senior residential development built in 2003

and located in New Port Richey, Florida.    The units were sold as vertically-

stacked fee-simple ownership triplexes.

26.    Each triplex consists of three floors, with each floor containing five bedrooms,

five bathrooms and a shared kitchen and living room, for a total of fifteen

5

bedrooms per triplex.  The bedrooms are marketed for lease primarily to senior citizens.

27.    Sunset Bay is nearly identical to a condominium complex built by the same developer in Kissimmee, Florida, called Harbor Bay Retirement Village.

28.    The Sunset Bay triplexes were sold as investment properties to individuals who financed the transactions with mortgage loans.  Lehman Brothers Bank financed the purchase of thirteen such triplexes in Sunset Bay:

| Closing Date | Borrowers | Property | Lehman Brothers Mortgage Loan |
|---|---|---|---|
| October 31, 2003 | Victor Angel | 7238 Kauai Loop #601 | $586,400 |
| October 31, 2003 | Victor Angel | 7234 Kauai Loop #602 | $586,400 |
| February 3, 2004 | David & Karly LeKites | 4142 Tonga Lane #703 | $549,750 |
| February 3, 2004 | Walter & Katherine LeKites | 4146 Tonga Lane #702 | $549,750 |
| February 13, 2004 | Scott & Johanna Hirota | 4150 Tonga Lane #701 | $549,750 |
| March 5, 2004 | Raul & Eloisa Quintana | 4124 Tonga Lane #802 | $549,750 |
| March 16, 2004 | George Galanoudes | 4127 Tonga Lane #1002 | $435,500 |
| March 16, 2004 | George Galanoudes | 4131 Tonga Lane #1001 | $435,500 |
| March 16, 2004 | George Galanoudes | 4135 Tonga Lane #1000 | $435,500 |
| March 22, 2004 | Barry Rutstein | 7314 Kauai Loop #1201 | $549,750 |
| March 22, 2004 | Sohan Sahota | 7245 Kauai Loop #1102 | $549,750 |
| March 22, 2004 | Sohan Sahota | 7241 Kauai Loop #1103 | $549,750 |
| April 29, 2004 | Robert Smith | 7242 Kauai Loop #600 | $549,750 |

AKERMAN SENTERFITT

### Overvalued Appraisals

29.     Passarelli and his firm, Passarelli & Potts, entered into valid contracts to provide credible appraisals of the subject properties that also comply with regulatory requirements established for transactions funded through federally regulated financial institutions.   In breach of these contracts, Passarelli and Passarelli & Potts provided appraisals that significantly overestimated the market value of each triplex at $733,000.   The actual value of each triplex is barely one-third of Passarelli's estimated values.

30.     FLORIDA STATUTE § 475.628 requires that Passarelli and Passarelli & Potts comply with the Uniform Standards of Professional Appraisal Practice ("USPAP").   Contrary to statements in the appraisal reports, Passarelli and Passarelli & Potts provided appraisals that are grossly inaccurate and fail to comply with USPAP.

31.     The appraisal reports fail to provide an accurate representation of the subject properties' actual intended use or their highest and best use.   The subject properties have an atypical design and were marketed as a senior care facility.  By failing to report the true characteristics of the properties that are relevant to the stated definition of market value and the intended use of the appraisal, an inaccurate estimate of value and description of the subject properties is presented. These are substantial errors of omission.

32.     The appraisals present three comparable sales of other triplexes within Sunset Bay.   Contrary to recognized appraisal methods and techniques, no comparable

sales from outside the development were presented or discussed in the appraisal reports.

33.     The earliest appraisals of Sunset Bay triplexes relied upon inflated comparable sales or pre-closing sales contracts as comparable sales, resulting a significant overestimation of value at or about $733,000.  The inflated sales based on these comparables were then used as comparables for subsequent appraisals.  The result is dozens of appraisals grossly overestimating the values of the triplexes.

34.     As appraiser for all of the triplexes, Passarelli and Passarelli & Potts knew or should have known that the comparable sales used were not representative of market value.  Passarelli and Passarelli & Potts also knew that lenders, such as Lehman Brothers Bank and its assignees, would rely on the appraisals in deciding whether to finance the transactions.

35.     Lehman Brothers Bank relied on the overvalued appraisals in making its decisions to finance the triplex purchases.

## The Closings

36.     Each of the thirteen closings for the transactions funded by Lehman Brothers Bank was handled by either Equitable Title or LandAmerica.  Equitable Title was the closing agent on nine transactions; LandAmerica closed four transactions.  The HUD-1 settlement statements for these transactions are attached as Composite Exhibit 1 :

8

**AKERMAN SENTERFITT**

| Closing Date | Borrowers | Property | Title Company |
|---|---|---|---|
| October 31, 2003 | Victor Angel | 7238 Kauai Loop #601 | Equitable Title |
| October 31, 2003 | Victor Angel | 7234 Kauai Loop #602 | Equitable Title |
| February 3, 2004 | David & Karly LeKites | 4142 Tonga Lane #703 | Equitable Title |
| February 3, 2004 | Walter & Katherine LeKites | 4146 Tonga Lane #702 | Equitable Title |
| February 13, 2004 | Scott & Johanna Hirota | 4150 Tonga Lane #701 | Equitable Title |
| March 5, 2004 | Raul & Eloisa Quintana | 4124 Tonga Lane #802 | Equitable Title |
| March 16, 2004 | George Galanoudes | 4127 Tonga Lane #1002 | Equitable Title |
| March 16, 2004 | George Galanoudes | 4131 Tonga Lane #1001 | Equitable Title |
| March 16, 2004 | George Galanoudes | 4135 Tonga Lane #1000 | Equitable Title |
| March 22, 2004 | Barry Rutstein | 7314 Kauai Loop #1201 | LandAmerica |
| March 22, 2004 | Sohan Sahota | 7245 Kauai Loop #1102 | LandAmerica |
| March 22, 2004 | Sohan Sahota | 7241 Kauai Loop #1103 | LandAmerica |
| April 29, 2004 | Robert Smith | 7242 Kauai Loop #600 | LandAmerica |

37.    Equitable Title and LandAmerica agreed to both contractual and fiduciary duties
for the benefit of Lehman Brothers Bank.  For example, the closing instructions
for the loans to George Galanoudes state in part:

9

**AKERMAN SENTERFITT**

> ### Closing Instructions
>
> Lehman Brothers Bank, FSB ("Lender") has agreed to make the loan described on the attached loan instructions. Settlement of this loan is to be completed in FULL ACCORDANCE with these instructions. We expect you to handle all details of this transaction in such a manner that our interest is fully protected.
>
> We are actively engaged in the secondary marketing of our loans. Failure to forward the loan closing documents and meet the other requirements herein within 24 hours of settlement, or as otherwise specifically set forth herein, may result in damages to us. Your willingness to undertake the settlement constitutes your agreement to compensate us for all costs and damages, including reasonable attorney's fees, we may suffer as a result of your failure to fully and timely comply herewith; time being of the essence hereof.
>
> Our consent to you closing this transaction is conditioned upon a) Your acceptance of these conditions, b) Your agreement to comply/complete the transaction as instructed herein; and c) Your delivery of documents as specified with the stipulated time frames. If you do not and/or cannot accept these conditions, return our instructions/documents immediately.

38.   The closing instructions for the other loans contain identical or substantively identical language and conditions.

39.   Agents of Equitable Title and LandAmerica accepted the closing instructions, including all terms and fiduciary duties, by signing the closing instructions, closing the transactions, and taking a fee for closing the transactions.

40.   Equitable Title and LandAmerica closed the transactions with multiple violations of Lehman Brothers Bank's closing instructions, including allowing second

10

**AKERMAN SENTERFITT**

mortgages which were not disclosed on the HUD-1 Settlement Statements and failing to disclose the seller's excessive contributions to the settlement costs. (Ex. 1A-1M.)

41.   As a condition of the mortgage loans, Lehman Brothers Bank prohibited the use of secondary financing.

42.   Directly contrary to this condition, in at least nine of the transactions the borrowers obtained second mortgages  that were not disclosed to Lehman Brothers Bank.  Despite knowing that the secondary financing was not allowed, agents of Equitable Title and LandAmerica prepared and signed settlement statements that failed to disclose the secondary financing.

43.   Additionally, the developer, with the knowledge and consent of the borrowers, contributed large sums of money at closing to make it appear as if the borrowers complied with the financing terms imposed by Lehman Brothers Bank.  Because these contributions also violated the closing conditions and instructions from Lehman Brothers Bank, agents for Equitable Title and LandAmerica breached their duty to disclose the payments from the developer at closing.  Further, as Equitable Title and LandAmerica collected and disbursed all closing funds and proceeds, they had actual knowledge of and were complicit in the subterfuge.

44.   This subterfuge was designed to close the transactions despite material breaches of the closing instructions from Lehman Brothers Bank.

45.   Equitable Title and LandAmerica were motivated to induce Lehman Brothers Bank to close on the transactions in order to receive additional business from the

developer in the future.  Between Harbor Bay and Sunset Bay, the developer had seventy-six triplexes for sale.  Equitable Title closed and received closing fees and title premiums for at least forty-five triplexes.  LandAmerica closed and received closing fees and title premiums for at least four triplexes.  Equitable Title and LandAmerica were further motivated to participate in the fraudulent scheme by the prospect of additional closings on additional triplexes.

46.   Lehman Brothers Bank mailed notice to Equitable Title and LandAmerica on April 28, 2006, regarding the damages caused by their actions.

### The Mortgage Broker

47.   Interlachen brokered eleven of the mortgage loans and either knew or should have known that these transactions were fraudulent.

48.   The contract between Lehman Brothers Bank and Interlachen was signed by "C. Baxter Bode — Managing Member" for Interlachen on July 31, 2003 ("Broker Agreement").  Lehman Brothers Bank has assigned its rights to LBH relating to the transactions at issue in this complaint.

49.   The Broker Agreement created contractual duties and obligations on Interlachen for the benefit of Lehman Brothers Bank and its assignee, LBH.

50.   The Broker Agreement required that "Broker [Interlachen] shall review the accuracy and completeness of all information provided by loan applicants, and shall at all times maintain the integrity of Broker's loan application and processing operations."  (Broker Agreement § 2.)

12

51.    As a material part of the Broker Agreement, Interlachen made the following

representations and warranties:

---

**Broker Agreement § 5**

5.      Representations and Warranties of Broker.  Broker
makes and will be deemed to have made to Lender, as of
the date hereof and continuing through the date of
submission of each loan application package to Lender and
the closing and funding of each loan, all of the following
representations and warranties . . . :

\*       \*       \*

(d)      To Broker's knowledge, after review of the
entire loan application package (including, without
limitation, the loan application, earnest money or purchase
contract, property appraisal, verification of income,
deposits and credits sources, and closing affidavits or
certifications and other representations by borrowers), no
fraudulent information or documentation is present in the
loan application package or in the origination process used
to generate the loan application package.  Broker has used
its best efforts to ensure that nothing contained in any loan
application package, whether obtained, derived or
requested by the borrower, Broker or otherwise, is untrue,
erroneous or misleading.

(e)      Broker has no knowledge nor any reason to
know of any of the following: . . . (vi) any circumstances or
condition which might indicate that the appraisal is
incomplete or inaccurate or that the value of the Property
might not be at least the amount reported therein; or (vii)
circumstances or conditions with respect to the Property,
the borrower or the borrower's credit that could reasonably
be expected to cause private institutional investors to regard
the loan as an unacceptable investment or cause the loan to
become delinquent, or adversely affect the value of
marketability of the loan.

\*       \*       \*

---

AKERMAN SENTERFITT

> Each such representation and warranty will survive any due diligence review by Lender, the closing and funding of each loan, the liquidation or repurchase of any loan, the resale of any loan, and the termination of this Agreement.

52.  Interlachen breached these warranties for all the reasons alleged herein by submitting to Lehman Brothers Bank eleven mortgage loans for Sunset Bay triplexes:

### Loans Brokered by Interlachen

| Closing Date | Borrowers | Property |
|---|---|---|
| February 3, 2004 | David & Karly LeKites | 4142 Tonga Lane #703 |
| February 3, 2004 | Walter & Katherine LeKites | 4146 Tonga Lane #702 |
| February 13, 2004 | Scott & Johanna Hirota | 4150 Tonga Lane #701 |
| March 5, 2004 | Raul & Eloisa Quintana | 4124 Tonga Lane #802 |
| March 16, 2004 | George Galanoudes | 4127 Tonga Lane #1002 |
| March 16, 2004 | George Galanoudes | 4131 Tonga Lane #1001 |
| March 16, 2004 | George Galanoudes | 4135 Tonga Lane #1000 |
| March 22, 2004 | Barry Rutstein | 7314 Kauai Loop #1201 |
| March 22, 2004 | Sohan Sahota | 7245 Kauai Loop #1102 |
| March 22, 2004 | Sohan Sahota | 7241 Kauai Loop #1103 |
| April 29, 2004 | Robert Smith | 7242 Kauai Loop #600 |

53.  As a result of Interlachen's breaches, LBH has suffered damages and losses on the delinquent and defaulted loans which are grossly under-secured.

14

**AKERMAN SENTERFITT**

54.     Under the Broker Agreement, Interlachen must repurchase these loans or

otherwise indemnify Lehman Brothers Bank and LBH for all damages and losses:

---

**Broker Agreement § 8**

8.      Indemnification.  In addition to Lender's rights and
remedies under applicable law (whether arising at law or in
equity), Broker shall indemnify and hold Lender . . .
harmless from and against, and shall reimburse [Lender]
with respect to, any and all . . . losses, damages . . . and
expenses (including, without limitation, reasonable fees and
disbursements of counsel, and court costs) . . . resulting
from, relating to or arising out of, whether the result of
negligent or intentional conduct or otherwise (i) any breach
of any representation or warranty made by Broker pursuant
to this Agreement or Lender's Guidelines; (ii) any breach or
failure to perform any covenant or obligation of Broker in
this Agreement or Lender's Guidelines; . . . .   Without
limiting the generality of the foregoing, (a) Broker's
indemnity shall extend to all repurchase demands either
made by Lender as a result of a breach of this Agreement or
made by any third party to which Lender has sold any loan
even if Lender has not incurred any loss with respect to
such loan . . .

*       *       *

. . . Broker expressly acknowledges and agrees that
Lender's review of, or failure to review, any loan
application package or any portion of a loan application
package shall not limit or otherwise affect Lender's right to
demand indemnification or repurchase of a loan or any
other relief provided by this Agreement.

---

55.     Lehman Brothers Bank has mailed notice to Interlachen regarding the damages

and losses caused by Interlachen's actions and demanding repurchase of these

loans.

15

**AKERMAN SENTERFITT**

56.     Interlachen breached the Broker Agreement by refusing to repurchase these loans.

## The Borrowers

57.     The Borrower Defendants participated in this scheme to defraud Lehman Brothers Bank.

58.     The Borrower Defendants each submitted mortgage applications containing multiple false and misleading statements and omissions, including but not limited to failure to disclose their use of secondary financing and that the settlement closing costs would be paid by the seller, not by the Borrower Defendants.

59.     The Borrower Defendants agreed to and signed mortgages which incorporated their applications into the mortgage agreement.   Misrepresentations on the mortgage applications constituted an independent default of the mortgage agreement:

> **Mortgage § 8**
> (Exs. 3A-3I.)
>
> "Borrower shall be in default if, during the Loan application process, Borrower . . . gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan."

60.     The Borrower Defendants also signed fraudulent settlement statements which failed to disclose the secondary financing and/or failed to disclose the true amounts of closing costs paid by the seller.

16

61.   The Borrower Defendants continued this subterfuge by signing sworn affidavits (the "Borrower Affidavits") attesting to representations which were false at the time they were made:

---

**Borrower Affidavits ¶¶ 2-3**

2. ACKNOWLEDGMENT OF PAYMENT.   That the required down payment, settlement costs and prepaid expenses as required to legally settle this purchase of the Property were paid by me/us.

3. SOURCE OF FUNDS.   That no portion of the down payment, closing costs and prepaid expenses were borrowed from any source and that I/we did not incur any debt in this transaction except the subject loan and no additional agreements or kickbacks with the seller or agent have been made that have not been disclosed to the Lender.

---

62.   The Borrower Defendants each made some or all of the following false and misleading misstatements and omissions of material fact, with full knowledge of their falsity and inaccuracy, to induce Lehman Brothers Bank to fund their mortgage loans, including but not necessarily limited to:

    a.   signing mortgage applications stating they were not using secondary financing and/or failed to disclose their use of secondary financing;

    b.   signing mortgage applications stating they would pay closing costs which they did not actually pay;

    c.   signing settlement statements which failed to disclose their secondary financing;

AKERMAN SENTERFITT

    d.    signing settlement statements which falsely listed closing costs as paid by the buyer which were not paid by the buyer at closing;

    e.    signing Borrower Affidavits attesting under oath they had paid the required down payment, settlement costs and prepaid expenses, which was not true;

    f.    signing Borrower Affidavits attesting under oath that they paid the down payment, closing costs and prepaid expenses at closing from their own funds and not from any other source, which was not true.

63.    The Borrower Defendants knew or should have known each of their representations were not true or recklessly disregarded the truth or falsity of their representations.

64.    In reliance on the representations made by the Borrower Defendants, Lehman Brothers Bank funded the mortgage loans subject to this complaint.

65.    Lehman Brothers Bank and the Borrower Defendants entered into a standstill agreement on June 7, 2005.  In consideration for the standstill agreement, the Borrower Defendants waived all conditions precedent to this action, including notice required by the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* The standstill agreement was terminated prior to the filing of this complaint.

### The Title Insurer

66.    Lawyers Title provided closing protection letters to Lehman Brothers Bank and its successors and/or assigns on all thirteen transactions, which constituted valid contracts.

AKERMAN SENTERFITT

67.     Lehman Brothers Bank assigned its rights under these closing protection letters to

LBH.

68.     Lehman Brothers Bank and LBH, as assignee, are beneficiaries of the closing

protection letters for each transaction.

69.     The closing protection letters require Lawyers Title to reimburse actual losses

incurred by LBH.  These letters state in pertinent part as follows:

> **Closing Protection Letters at 1**
>
> Lawyers Title Insurance Corporation . . . hereby agrees to reimburse you [Lehman Brothers] for actual loss incurred by you in connection with such closings . . . when such loss arises out of:
>
> 1.     Failure of . . . Issuing Agent . . . to comply with [Lehman Brothers'] written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land . . . or (b) the obtaining of any other document specifically required by [Lehman Brothers], but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or
>
> 2.     Fraud or dishonesty of said Issuing Agent . . . in handling your funds or documents in connection with such closings.

70.     LBH has a right to reimbursement of its actual losses for all of the reasons stated

in this complaint which trigger both paragraphs 1 and 2 of the closing protection

letters.  Lawyers Title's Issuing Agents failed to comply with Lehman Brothers

Bank's written closing instructions both as to the status of title and as to obtaining

AKERMAN SENTERFITT

the required documentation.  Further, Lawyers Title's Issuing Agents committed fraud or dishonesty in handling funds or documents in connection with the closings.

71.  Lawyers Title has breached the closing protection letters by not reimbursing Lehman Brothers Bank or LBH, as assignee, for the actual losses incurred.

72.  Lehman Brothers Bank mailed timely notice to Lawyers Title regarding the damages and losses caused by Equitable Title and LandAmerica on each of the loans described herein.

20

—CLAIMS FOR RELIEF—

## COUNT I
## FRAUD
### Against All Acting Defendants

73.  LBH realleges paragraphs 1 – 72.

74.  The Acting Defendants made false statements of material fact and failed to disclose material facts to Lehman Brothers Bank in connection with its funding of mortgage loans used to purchase the triplexes, as pled specifically in paragraphs 36 – 65.

75.  The Acting Defendants intended that the representations induce Lehman Brothers Bank to act on them.

76.  The Acting Defendants knew the representations were false at the time the representations were made to Lehman Brothers Bank.

77.  Lehman Brothers Bank reasonably relied upon these representations.

78.  Lehman Brothers Bank suffered damages by justifiably relying on the representations, which damages belong to LBH as assignee.

*Wherefore*, LBH respectfully requests judgment be entered in its favor awarding it damages and such other relief this Court deems proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION
### Against All Acting Defendants, Fred N. Passarelli, and Passarelli & Potts

79.  LBH realleges paragraphs 1 – 72.

AKERMAN SENTERFITT

80.    The Acting Defendants made false statements of material fact and failed to disclose material facts to Lehman Brothers Bank in connection with Lehman Brothers Bank's funding of mortgage loans used to purchase the triplexes.

81.    The Acting Defendants either knew their representations were false, made the misrepresentations without knowledge of their truth or falsity, or should have known the representations were false.

82.    Defendants Fred Passarelli and Passarelli & Potts made inaccurate statements of material fact with respect to their appraisals of the triplexes and failed to disclose material facts to Lehman Brothers Bank in connection with Lehman Brothers Bank's funding of mortgage loans used to purchase the triplexes.

83.    Defendants Fred Passarelli and Passarelli & Potts either knew their representations were inaccurate, made the misrepresentations without knowledge of their accuracy, or should have known the representations were inaccurate.

84.    The Acting Defendants, Fred Passarelli and Passarelli & Potts intended that Lehman Brothers Bank would rely upon and be induced by the misrepresentations to fund the mortgage loans.

85.    Lehman Brothers Bank suffered damages by acting in justifiable reliance on the misrepresentations, which damages now belong to LBH as assignee.

*Wherefore*, LBH respectfully requests judgment be entered in its favor awarding it damages and such other relief this Court deems proper.

AKERMAN SENTERFITT

## COUNT III
## NEGLIGENCE
**Against All Acting Defendants, Fred N. Passarelli, and Passarelli & Potts**

86.   LBH realleges paragraphs 1 – 72.

87.   The Acting Defendants, Fred Passarelli and Passarelli & Potts owed a duty of care to Lehman Brothers Bank and its parent company, LBH, to provide accurate and truthful information so that Lehman Brothers Bank could evaluate whether to fund the requested mortgage loans for purchase of the triplexes.

88.   The Acting Defendants breached their duty of care by providing false statements and failing to disclose material information regarding the mortgage loans and the closings.

89.   Defendants Fred Passarelli & Passarelli & Potts breached their duty of care by providing inaccurate appraisals and failing to disclose material information regarding the appraisals of the triplexes.

90.   These false and inaccurate statements and omissions proximately caused damages to Lehman Brothers Bank, which damages now belong to LBH as assignee.

*Wherefore*, LBH respectfully requests judgment be entered in its favor awarding it damages and such other relief this Court deems proper.

23

## COUNT IV
## BREACH OF CONTRACT
**Against Scott Hirota, Johanna Hirota, Raul Quintana, Eloisa Quintana,
George Galanoudes, Barry Rutstein, Sohan Sahota, Robert Smith,
Equitable Title, LandAmerica, Interlachen and Lawyers Title**

91.    LBH realleges paragraphs 1 – 72.

92.    Defendants Scott Hirota, Johanna Hirota, Raul Quintana, Eloisa Quintana, George Galanoudes, Barry Rutstein, Sohan Sahota, Robert Smith, Equitable Title, LandAmerica, Interlachen and Lawyers Title entered into contracts with Lehman Brothers Bank which they breached, causing Lehman Brothers Bank damages. These contracts have been assigned to LBH, and all rights and damages belong to LBH as assignee.

### Breach of Contract by the Borrower Defendants

93.    Defendants Scott Hirota, Johanna Hirota, Raul Quintana, Eloisa Quintana, George Galanoudes, Barry Rutstein, Sohan Sahota, and Robert Smith entered into valid contracts to obtain mortgage financing from Lehman Brothers Bank.

94.    Section 8 of the mortgages of defendants Scott Hirota, Johanna Hirota, Raul Quintana, Eloisa Quintana, George Galanoudes, Barry Rutstein, Sohan Sahota and Robert Smith provide that "Borrower shall be in default if, during the Loan application process, Borrower . . . gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan."

95.    Defendants Scott Hirota, Johanna Hirota, Raul Quintana, Eloisa Quintana, George Galanoudes, Barry Rutstein, Sohan Sahota and Robert Smith failed to disclose

24

their secondary financing on their mortgage applications and/or stated they would pay closing costs which they did not actually pay, constituting a breach of their mortgage contracts.

### Breach of Contract by Equitable Title and LandAmerica

96.    Defendants Equitable Title and LandAmerica entered into valid contracts with Lehman Brothers Bank in the form of the closing instructions to perform the settlement of the mortgage loan transactions.

97.    Defendants Equitable Title and LandAmerica breached these contracts by failing to comply with the settlement instructions by, among other violations, allowing secondary financing and allowing excessive seller contributions to closing costs.

### Breach of Contract by Interlachen

98.    Defendant Interlachen entered into a valid contract in its Broker Agreement with Lehman Brothers Bank.

99.    Defendant Interlachen breached this contract by failing to comply with the terms of the Broker Agreement.

### Breach of Contract by Lawyers Title

100.    Defendant Lawyers Title entered into valid contracts in its closing protection letters with Lehman Brothers Bank.

101.    Defendant Lawyers Title breached these contracts by failing to comply with the terms of the closing protection letters.

102.    Lehman Brothers Bank suffered damages as a result of these contract breaches, which damages belong to LBH as assignee.

AKERMAN SENTERFITT

*Wherefore*, LBH respectfully requests that the Court enter judgment in its favor awarding it damages, costs, attorney's fees, and such other relief this Court deems proper against defendants Scott Hirota, Johanna Hirota, Raul Quintana, Eloisa Quintana, George Galanoudes, Barry Rutstein, Sohan Sahota, Robert Smith, Equitable Title, LandAmerica, Interlachen, and Lawyers Title.

## COUNT V
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
### Against Fred Passarelli, Passarelli & Potts, and Lawyers Title

103.    LBH realleges paragraphs 1 – 72.

104.    Defendants Passarelli and Passarelli & Potts entered into valid contracts to provide appraisals of the value of the properties by accurately and truthfully stating their professional opinion and in compliance with the Uniform Standards of Professional Appraisal Practice.

105.    Lehman Brothers Bank is not a named party to the appraisal contracts.  Lehman Brothers Bank and its assignee LBH, however, are the intended beneficiaries of the appraisal contracts.

106.    Defendants Passarelli and Passarelli & Potts breached these contracts by providing inaccurate appraisals supporting the inflated sales prices which did not comply with the Uniform Standards of Professional Appraisal Practice.

107.    Defendant Lawyers Title entered into valid contracts in its closing protection letters and title policies.

108.    Lehman Brothers Bank and its assignees are named beneficiaries of the closing protection letter contracts and title policies.

109.    Defendant Lawyers Title breached the closing protection letter contracts and title policies by not reimbursing Lehman Brothers Bank or its assignee LBH for incurred losses.

110.    Lehman Brothers Bank suffered damages as a result of these contract breaches, which damages belong to its assignee LBH.

*Wherefore*, LBH respectfully requests that the Court enter judgment in its favor awarding damages, costs, attorney's fees and such other relief this Court deems proper against Passarelli, Passarelli & Potts, and Lawyers Title.

**COUNT VI**
**<u>BREACH OF FIDUCIARY DUTY</u>**
**Against Fred Passarelli, Passarelli & Potts,**
**Equitable Title and LandAmerica**

111.    LBH realleges paragraphs 1 – 72.

112.    Defendants Fred Passarelli, Passarelli & Potts, Equitable Title and LandAmerica assumed a duty to advise and/or protect Lehman Brothers Bank in these mortgage transactions by providing their professional services for which they received a fee.

113.    Lehman Brothers Bank relied on this trust and confidence in the performance of these professional services.

114.    Defendants Fred Passarelli, Passarelli & Potts, Equitable Title and LandAmerica knew that Lehman Brothers Bank and its assignees, as well as purchasers of the mortgage loans on the secondary market, would rely upon and trust the appraisals and settlement statements to determine the value of the mortgage loans.

115.    Defendants Fred Passarelli, Passarelli & Potts, Equitable Title and LandAmerica breached their fiduciary duties to Lehman Brothers Bank by manufacturing and

27

providing overvalued appraisals and fraudulent settlement statements, respectively.

116. Lehman Brothers Bank suffered damages as a result, which damages belong to LBH as assignee.

*Wherefore*, LBH respectfully requests that the Court enter judgment in its favor awarding damages and such other relief as this Court deems proper against Fred Passarelli, Passarelli & Potts, Equitable Title and LandAmerica.

## COUNT VII
## CIVIL CONSPIRACY
### Against All Acting Defendants

117. LBH realleges paragraphs 1 – 72.

118. The Acting Defendants conspired to fraudulently induce Lehman Brothers Bank to fund mortgage loans for the purchase of triplexes at Sunset Bay.

119. The Acting Defendants each did one or more of the following acts in furtherance of their conspiracy:   provided fraudulent information on their mortgage applications; failed to disclose the use of secondary financing at the closings on the triplexes; failed to disclose the excessive contributions from the developer towards the closing costs; and breached their contractual and fiduciary duties at the closing.

120. Lehman Brothers Bank suffered damages as a result of this conspiracy, which damages belong to LBH as assignee.

28

*Wherefore*, LBH respectfully requests that the Court enter judgment in its favor awarding damages and such other relief as the Court deems proper against the Acting Defendants.

## COUNT VIII
## FORECLOSURE
### Against Scott & Johanna Hirota

121.   LBH realleges paragraphs 1 – 72.

122.   This count is to foreclose a mortgage on real property located in Pasco County, Florida.

123.   Scott and Johanna Hirota executed and delivered a Note and Mortgage in the principal amount of $549,750.00 on February 13, 2004. The Note was given to Lehman Brothers Bank. The Mortgage was given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted solely as Lehman Brothers Bank's nominee. Beneficial interest in the loan was retained by Lehman Brothers Bank. True and correct copies of these loan documents are attached as Exhibits 2A and 3A, which shall be referred to collectively as the "Hirota Loan Documents".

124.   An assignment of mortgage from MERS to Lehman Brothers Bank was executed on August 24, 2006. This assignment transferred all of MERS's rights in the Mortgage to Lehman Brothers Bank. A copy of this assignment is attached as Exhibit 4A. On October 10, 2006, Lehman Brothers Bank executed an assignment of mortgage transferring its rights in the loan to LBH. A copy of this

29

assignment is attached as Exhibit 5A. Through these assignments all rights under

the Loan Documents have been transferred to LBH.

125.   LBH presently owns and holds the Hirota Loan Documents, specifically including

the Note and Mortgage, and is duly authorized to bring this action.

126.   The Hirota Loan Documents encumber the following described property owned

by the Hirotas in Pasco County, Florida ("4150 Tonga Lane #701"):

> A parcel of land lying in the Southwest ¼ of Section 15,
> Township 26 South, Range 16 East, PASCO County,
> Florida being known as Unit 701, Sunset Bay Club, being
> more particularly described as follows:
>
> Commence at the South ¼ corner of Section 15, Township
> 26 South, Range 16 East, Pasco County, Florida; thence
> North 00°09'32" East along the East line of the Southwest
> ¼ Section 15 for a distance of 1036.74 feet; thence North
> 89°50'28" West departing said East line for a distance of
> 330.50 feet to the Point of Beginning; thence South
> 43'48'31" West along a line one foot offset to the wall line
> of a three story building for a distance of 36.90 feet; thence
> North 46°11'29" West along the centerline of a wall
> separating this unit from the adjoining unit for a distance of
> 50.85 feet; thence North 43°48'31" East along a line one
> foot offset to the wall line of said building for a distance of
> 36.90 feet; thence South 46°11'29" East along the wall line
> of said building for a distance of 50.85 feet to the Point of
> Beginning, being also known as Tonga Lane #701, New
> Port Richey, Florida.

127.   The Hirota Loan Documents are in default by virtue of the Hirotas' failure to pay

the required monthly installment due on December 1, 2004, and all subsequent

payments due thereafter.

128.   The Hirota Loan Documents are also in default due to the application fraud as

alleged herein.

129.   All conditions precedent to the acceleration of the debt and the commencement of this action have been fulfilled or waived.

130.   Lehman Brothers Bank and LBH have declared the full amount payable under the loan documents due, including attorneys' fees and costs for which the Hirotas are responsible.

131.   The Hirotas owe LBH as of the date of filing this complaint the following sums through October 31, 2006:

| | |
|---|---|
| Principal: | $ 549,750.00 |
| Interest: | $  61,811.51 |
| Escrows: | $   5,848.52 |
| BPO: | $     100.00 |
| Property Inspection: | $      12.00 |
| **Total:** | **$ 617,522.03** |

In addition, interest will continue to accrue and other charges and advances may be incurred by LBH, including but not limited to additional loan servicing expenses, attorneys' fees and litigation costs, for which the Hirotas are responsible. The Hirotas must contact William P. Heller, Esq. of Akerman Senterfitt at (954) 759-8945 to obtain updated payoff figures.

132.   Lehman Brothers Bank and LBH retained counsel to prosecute foreclosure and are obligated to pay counsel reasonable fees for their services. Lehman Brothers Bank and LBH are contractually entitled to recover their attorneys' fees and litigation costs pursuant to the Hirota Loan Documents.

133.   The following defendants may claim some interest in the property but any such interest would be subordinate and inferior to the right, title, interest and lien of LBH:

a. Unknown Tenants 1 through 15 of 4150 Tonga Lane #701 by virtue of possession only.

b. Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the *Declaration of Covenants, Conditions and Restrictions* ["Declaration"], recorded in Official Records Book 4972, Page 563 and the first amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida. Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and the Hirotas. A copy of the *Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

134. SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including the Hirotas. LBH has the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3A and in accordance with FLORIDA STATUTE § 697.07. LBH demands that the Hirotas immediately turn over all rents in their possession or control. LBH further demands that SBCMA immediately pay over to LBH all rental program gross income due and outstanding or which may become due with respect to 4150 Tonga Lane #701.

*Wherefore*, LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and taxable litigation costs, and that the defendants found responsible for same be ordered to pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the property to be sold by judicial sale.  LBH also respectfully requests the Court to retain jurisdiction in order to make any and all further orders and judgments as may be necessary and proper, including (but not limited to) the issuance of a writ of possession and the award of a deficiency judgment.

### COUNT IX
### REFORMATION OF LEGAL DESCRIPTION
**Scott & Johanna Hirota's Mortgage & Deed for 4150 Tonga Lane #701**

135.   LBH realleges paragraphs 121 – 134.

136.   This count is to reform the mortgage and deed on real property located in Pasco County, Florida.

137.   The legal descriptions in the *Mortgage* (Ex. 3A) and *Special Warranty Deed* (Ex. 7) for 4150 Tonga Lane #701 contain an error that unquestionably was the result of inadvertence.  Specifically, the fifth line of the second paragraph of the legal description should read "thence South 43°48'31" West" rather than "thence South 43'48'31" West".

138.   LBH seeks to reform the deed and mortgage so they read correctly, and they are consistent with the intention of the parties to the loan transaction.

33

*Wherefore*, LBH respectfully requests that the Court reform the legal description of the mortgage and deed and such other relief as the Court deems proper.

## COUNT X
## FORECLOSURE
### Against Raul & Eloisa Quintana

139. LBH realleges paragraphs 1 – 72.

140. This count is to foreclose a mortgage on real property located in Pasco County, Florida.

141. Raul and Eloisa Quintana executed and delivered a Note and Mortgage in the principal amount of $549,750.00 on March 5, 2004. The Note was given to Lehman Brothers Bank. The Mortgage was given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted solely as Lehman Brothers Bank's nominee. Beneficial interest in the loan was retained by Lehman Brothers Bank. True and correct copies of these loan documents are attached as Exhibits 2B and 3B, which shall be referred to collectively as the "Quintana Loan Documents".

142. An assignment of mortgage from MERS to Lehman Brothers Bank was executed on August 24, 2006. This assignment transferred all of MERS's rights in the Mortgage to Lehman Brothers Bank. A copy of this assignment is attached as Exhibit 4B. On October 10, 2006, Lehman Brothers Bank executed an assignment of mortgage transferring its rights in the loan to LBH. A copy of this assignment is attached as Exhibit 5B. Through these assignments all rights under the Loan Documents have been transferred to LBH.

AKERMAN SENTERFITT

143.   LBH presently owns and holds the Quintana Loan Documents, specifically

including the Note and Mortgage, and is duly authorized to bring this action.

144.   The Quintana Loan Documents encumber the following described property

owned by the Quintanas in Pasco County, Florida ("4124 Tonga Lane #802"):

> A parcel of land lying in the Southwest ¼ of Section 15,
> Township 26 South, Range 16 East, Pasco County, Florida,
> being known as Unit 802, Sunset Bay Club, and being more
> particularly described as follows:
>
> Commence at the South ¼ corner of Section 15, Township
> 26 South Range 16 East, Pasco County, Florida; thence
> North 00 degrees 09'32" East along the East line of the
> Southwest ¼ of Section 15 for a distance of 787.41 feet;
> thence North 89 degrees 50'28" West departing said East
> line for a distance of 567.74 feet to the point of beginning;
> thence North 46 degrees 11'59" West along the wall line of
> a three story building for a distance of 50.85 feet; thence
> North 43 degrees 48'01" East along a line one foot offset to
> the wall line of said building for a distance of 36.90 feet;
> thence South 46 degrees 11'59" East along the centerline of
> a wall separating this unit from the adjoining unit for a
> distance of 50.85 feet; thence South 43 degrees 48'01"
> West along a line one foot offset to said building for a
> distance of 36.90 feet to the point of beginning, being also
> known as 4124 Tonga Lane, Unit 802, New Port Richey,
> Florida.

145.   The Quintana Loan Documents are in default by virtue of the Quintanas' failure to

pay the required monthly installment due on October 1, 2004, and all subsequent

payments due thereafter.

146.   The Quintana Loan Documents are also in default due to the application fraud as

alleged herein.

147.   All conditions precedent to the acceleration of the debt and the commencement of

this action have been fulfilled or waived.

35

148.   Lehman Brothers Bank and LBH have declared the full amount payable under the loan documents due, including attorneys' fees and costs for which the Quintanas are responsible.

149.   The Quintanas owe LBH as of the date of filing this complaint the following sums through October 31, 2006:

| | |
|---|---|
| Principal: | $ 547,356.58 |
| Interest: | $ 80,008.71 |
| Escrows: | $ 2,587.95 |
| BPO: | $ 100.00 |
| Property Inspection: | $ 12.00 |
| **Total:** | **$ 630,065.24** |

In addition, interest will continue to accrue and other charges and advances may be incurred by LBH, including but not limited to additional loan servicing expenses, attorneys' fees and litigation costs, for which the Quintanas are responsible.  The Quintanas must contact William P. Heller, Esq. of Akerman Senterfitt at (954) 759-8945 to obtain updated payoff figures.

150.   Lehman Brothers Bank and LBH retained counsel to prosecute foreclosure and are obligated to pay counsel reasonable fees for their services.  Lehman Brothers Bank and LBH are contractually entitled to recover their attorneys' fees and litigation costs pursuant to the Quintana Loan Documents.

151.   The following defendants may claim some interest in the property but any such interest would be subordinate and inferior to the right, title, interest and lien of LBH:

    a.   Unknown Tenants 16 through 30 of 4124 Tonga Lane #802 by virtue of possession only.

36

AKERMAN SENTERFITT

b.  Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the *Declaration of Covenants, Conditions and Restrictions* ["Declaration"], recorded in Official Records Book 4972, Page 563 and the first amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida.   Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and the Quintanas.   A copy of the *Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

152.   SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including the Quintanas.   LBH has the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3B and in accordance with FLORIDA STATUTE § 697.07.   LBH demands that the Quintanas immediately turn over all rents in their possession or control.   LBH further demands that SBCMA immediately pay over to LBH all rental program gross income due and outstanding or which may become due with respect to 4124 Tonga Lane #802.

*Wherefore*, LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and taxable litigation costs, and that the defendants found responsible for same be ordered to

AKERMAN SENTERFITT

pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the property to be sold by judicial sale.  LBH also respectfully requests the Court to retain jurisdiction in order to make any and all further orders and judgments as may be necessary and proper, including (but not limited to) the issuance of a writ of possession and the award of a deficiency judgment.

## COUNT XI
## FORECLOSURE
### Against George Galanoudes (4135 Tonga Lane #1000)

153.    LBH realleges paragraphs 1 – 72.

154.    This count is to foreclose a mortgage on real property located in Pasco County, Florida.

155.    Mr. Galanoudes executed and delivered a Note and Mortgage in the principal amount of $435,500.00 on March 16, 2004.  The Note was given to Lehman Brothers Bank.  The Mortgage was given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted solely as Lehman Brother' Bank's nominee. Beneficial interest in the loan was retained by Lehman Brothers Bank.  True and correct copies of these loan documents are attached as Exhibits 2C and 3C, which shall be referred to collectively as the "Galanoudes (4135 Tonga Lane #1000) Loan Documents".

156.    An assignment of mortgage from MERS to Lehman Brothers Bank was executed on August 24, 2006.  This assignment transferred all of MERS's rights in the

Mortgage to Lehman Brothers Bank. A copy of this assignment is attached as Exhibit 4C. On October 10, 2006, Lehman Brothers Bank executed an assignment of mortgage transferring its rights in the loan to LBH. A copy of this assignment is attached as Exhibit 5C. Through these assignments all rights under the Loan Documents have been transferred to LBH.

157. LBH presently owns and holds the Galanoudes (4135 Tonga Lane #1000) Loan Documents, specifically including the Note and Mortgage, and is duly authorized to bring this action.

158. The Galanoudes (4135 Tonga Lane #1000) Loan Documents encumber the following described property owned by Mr. Galanoudes in Pasco County, Florida ("4135 Tonga Lane #1000"):

> A parcel of land lying in the Southwest ¼ of Section 15, Township 26 South, Range 16 East, Pasco County, Florida, being known as Unit 1000, Sunset Bay Club, and being more particularly described as follows:
>
> Commence at the South ¼ corner of Section 15, Township 26 South Range 16 East, Pasco County, Florida; thence North 00 degrees 09'32" East along the East line of the Southwest ¼ of Section 15 for a distance of 1005.67 feet; thence North 89 degrees 50'28" West departing said East line for a distance of 569.45 feet to the point of beginning; thence South 43 degrees 48'37" West along a line one foot offset to the wall line of a three story building for a distance of 38.15 feet; thence North 46 degrees 11'23" West along the wall line of said building for a distance of 50.85 feet; thence North 43 degrees 48'37" East along a line one foot offset to the wall line of said building for a distance of 38.15 feet; thence South 46 degrees 11'23" East along a line one foot offset to said building for a distance of 50.85 feet to the point of beginning, being known as 4135 Tonga Lane, New Port Richey, Florida.

159.    The Galanoudes (4135 Tonga Lane #1000) Loan Documents are in default by virtue of Mr. Galanoudes' failure to pay the required monthly installment due on May 1, 2005, and all subsequent payments due thereafter.

160.    The Galanoudes (4135 Tonga Lane #1000) Loan Documents are also in default due to the application fraud as alleged herein.

161.    All conditions precedent to the acceleration of the debt and the commencement of this action have been fulfilled or waived.

162.    Lehman Brothers Bank and LBH have declared the full amount payable under the loan documents due, including attorneys' fees and costs for which Mr. Galanoudes is responsible.

163.    Mr. Galanoudes owes LBH as of the date of filing this complaint the following sums through October 31, 2006:

| Principal: | $ 435,500.00 |
|---|---|
| Interest: | $ 47,002.67 |
| Escrows: | $ 2,912.43 |
| BPO: | $ 100.00 |
| **Total:** | **$ 485,515.10** |

In addition, interest will continue to accrue and other charges and advances may be incurred by LBH, including but not limited to additional loan servicing expenses, attorneys' fees and litigation costs, for which Mr. Galanoudes is responsible. Mr. Galanoudes must contact William P. Heller, Esq. of Akerman Senterfitt at (954) 759-8945 to obtain updated payoff figures.

164.    Lehman Brothers Bank and LBH have retained counsel to prosecute foreclosure and are obligated to pay counsel reasonable fees for their services. Lehman

40

Brothers Bank and LBH are contractually entitled to recover their attorneys' fees and litigation costs pursuant to the Galanoudes (4135 Tonga Lane #1000) Loan Documents.

165.   The following defendants may claim some interest in the property but any such interest would be subordinate and inferior to the right, title, interest and lien of LBH:

    a.   Unknown Tenants 31 through 45 of 4135 Tonga Lane #1000 by virtue of possession only.

    b.   Unknown Spouse of George Galanoudes by virtue of marital interest only.

    c.   Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the *Declaration of Covenants, Conditions and Restrictions* ["Declaration"], recorded in Official Records Book 4972, Page 563 and the first amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida.   Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and Mr. Galanoudes.   A copy of the *Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

166.   SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including Mr. Galanoudes.   Lehman Brothers Bank and its assignee, LBH, have

AKERMAN SENTERFITT

the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3C and in accordance with FLORIDA STATUTE § 697.07. LBH demands that Mr. Galanoudes immediately turn over all rents in his possession or control. LBH further demands that SBCMA immediately pay over to LBH all rental program gross income due and outstanding or which may become due with respect to 4135 Tonga Lane #1000.

*Wherefore*, LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and taxable litigation costs, and that the defendants found responsible for same be ordered to pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the property to be sold by judicial sale. LBH also respectfully requests the Court to retain jurisdiction in order to make any and all further orders and judgments as may be necessary and proper, including (but not limited to) the issuance of a writ of possession and the award of a deficiency judgment.

**COUNT XII**
**FORECLOSURE**
**Against George Galanoudes (4131 Tonga Lane #1001)**

167.    LBH realleges paragraphs 1 – 72.

168.    This count is to foreclose a mortgage on real property located in Pasco County,

Florida.

169.    Mr. Galanoudes executed and delivered a Note and Mortgage in the principal

amount of $435,500.00 on March 16, 2004.   The Note was given to Lehman

Brothers Bank.   The Mortgage was given to Mortgage Electronic Registration

Systems, Inc. ("MERS"), which acted solely as Lehman Brothers Bank's nominee.

Beneficial interest in the loan was retained by Lehman Brothers Bank.   True and

correct copies of these loan documents are attached as Exhibits 2D and 3D, which

shall be referred to collectively as the "Galanoudes (4131 Tonga Lane #1001)

Loan Documents".

170.    An assignment of mortgage from MERS to Lehman Brothers Bank was executed

on August 24, 2006.   This assignment transferred all of MERS's rights in the

Mortgage to Lehman Brothers Bank.   A copy of this assignment is attached as

Exhibit 4D.    On October 10, 2006, Lehman Brothers Bank executed an

assignment of mortgage transferring its rights in the loan to LBH.   A copy of this

assignment is attached as Exhibit 5D .  Through these assignments all rights under

the Loan Documents have been transferred to LBH.

AKERMAN SENTERFITT

171.   LBH presently owns and holds the Galanoudes (4131 Tonga Lane #1001) Loan

Documents, specifically including the Note and Mortgage, and is duly authorized

to bring this action.

172.   The Galanoudes (4131 Tonga Lane #1001) Loan Documents encumber the

following described property owned by Mr. Galanoudes in Pasco County, Florida

("4131 Tonga Lane #1001"):

> A parcel of land lying in the Southwest ¼ of Section 15,
> Township 26 South, Range 16 East, Pasco County, Florida,
> being known as Unit 1001, Sunset Bay Club, and being
> more particularly described as follows:
>
> Commence at the South ¼ corner of Section 15, Township
> 26 South Range 16 East, Pasco County, Florida; thence
> North 00 degrees 09'32" East along the East line of the
> Southwest ¼ of Section 15 for a distance of 967.36 feet;
> thence North 89 degrees 50'28" West departing said East
> line for a distance of 606.00 feet to the point of beginning;
> thence South 43 degrees 48'37" West along a line one foot
> offset to the wall line of a three story building for a distance
> of 36.90 feet; thence North 46 degrees 11'23" West along
> the centerline of a wall separating this unit from the
> adjoining unit for a distance of 50.85 feet; thence North 43
> degrees 48'37" East along a line one foot offset to the wall
> line of said building for a distance of 36.90 feet; thence
> South 46 degrees 11'23" East along the wall line of said
> building for a distance of 50.85 feet to the point of
> beginning, being known as 4131 Tonga Lane #1001, New
> Port Richey, Florida.

173.   The Galanoudes (4131 Tonga Lane #1001) Loan Documents are in default by

virtue of Mr. Galanoudes' failure to pay the required monthly installment due on

May 1, 2005, and all subsequent payments due thereafter.

174.   The Galanoudes (4131 Tonga Lane #1001) Loan Documents are also in default

due to the application fraud as alleged herein.

44

175. All conditions precedent to the acceleration of the debt and the commencement of this action have been fulfilled or waived.

176. Lehman Brothers and LBH have declared the full amount payable under the loan documents due, including attorneys' fees and costs for which Mr. Galanoudes is responsible.

177. Mr. Galanoudes owes LBH as of the date of filing this complaint the following sums through October 31, 2006:

| | |
|---|---|
| Principal: | $ 435,500.00 |
| Interest: | $ 47,002.67 |
| Escrows: | $ 2,741.17 |
| **Total:** | **$ 485,243.84** |

In addition, interest will continue to accrue and other charges and advances may be incurred by LBH, including but not limited to additional loan servicing expenses, attorneys' fees and litigation costs, for which Mr. Galanoudes is responsible. Mr. Galanoudes must contact William P. Heller, Esq. of Akerman Senterfitt at (954) 759-8945 to obtain updated payoff figures.

178. Lehman Brothers Bank and LBH have retained counsel to prosecute foreclosure and are obligated to pay counsel reasonable fees for their services. Lehman Brothers Bank and LBH are contractually entitled to recover their attorneys' fees and litigation costs pursuant to the Galanoudes (4131 Tonga Lane #1001) Loan Documents.

179. The following defendants may claim some interest in the property but any such interest would be subordinate and inferior to the right, title, interest and lien of LBH:

45

    a.  Unknown Tenants 46 through 60 of 4131 Tonga Lane #1001 by virtue of possession only.

    b.  Unknown Spouse of George Galanoudes by virtue of marital interest only.

    c.  Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the *Declaration of Covenants, Conditions and Restrictions* ["Declaration"], recorded in Official Records Book 4972, Page 563 and the first amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida.  Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and Mr. Galanoudes.  A copy of the *Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

180.  SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including Mr. Galanoudes.  Lehman Brothers Bank and its assignee, LBH, have the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3D and in accordance with FLORIDA STATUTE § 697.07.  LBH demands that Mr. Galanoudes immediately turn over all rents in his possession or control. LBH further demands that SBCMA immediately pay over to LBH all rental

program gross income due and outstanding or which may become due with respect to 4131 Tonga Lane #1001.

*Wherefore*, LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and taxable litigation costs, and that the defendants found responsible for same be ordered to pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the property to be sold by judicial sale. LBH also respectfully requests the Court to retain jurisdiction in order to make any and all further orders and judgments as may be necessary and proper, including (but not limited to) the issuance of a writ of possession and the award of a deficiency judgment.

## COUNT XIII
## FORECLOSURE
### Against George Galanoudes (4127 Tonga Lane #1002)

181.   LBH realleges paragraphs 1 – 72.

182.   This count is to foreclose a mortgage on real property located in Pasco County, Florida.

183.   Mr. Galanoudes executed and delivered a Note and Mortgage in the principal amount of $435,500.00 on March 16, 2004. The Note was given to Lehman Brothers Bank. The Mortgage was given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted solely as Lehman Brothers Bank's nominee. Beneficial interest in the loan was retained by Lehman Brothers Bank. True and

47

correct copies of these loan documents are attached as Exhibits 2E and 3E, which shall be referred to collectively as the "Galanoudes (4127 Tonga Lane #1002) Loan Documents".

184.   An assignment of mortgage from MERS to Lehman Brothers Bank was executed on August 24, 2006.  This assignment transferred all of MERS's rights in the Mortgage to Lehman Brothers Bank.  A copy of this assignment is attached as Exhibit 4E.   On October 10, 2006, Lehman Brothers Bank executed an assignment of mortgage transferring its rights in the loan to LBH.  A copy of this assignment is attached as Exhibit 5E.  Through these assignments all rights under the Loan Documents have been transferred to LBH.

185.   LBH presently owns and holds the Galanoudes (4127 Tonga Lane #1002) Loan Documents, specifically including the Note and Mortgage, and is duly authorized to bring this action.

186.   The Galanoudes (4127 Tonga Lane #1002) Loan Documents encumber the following described property owned by Mr. Galanoudes in Pasco County, Florida ("4127 Tonga Lane #1002"):

A parcel of land lying in the Southwest ¼ of Section 15, Township 26 South, Range 16 East, Pasco County, Florida, being known as Unit 1002, Sunset Bay Club, and being more particularly described as follows:

Commence at the South ¼ corner of Section 15, Township 26 South Range 16 East, Pasco County, Florida; thence North 00 degrees 09'32" East along the East line of the Southwest ¼ of Section 15 for a distance of 913.96 feet; thence North 89 degrees 50'28" West departing said East line for a distance of 656.94 feet to the point of beginning; thence North 46 degrees 11'23" West along the wall line of

48

a three story building for a distance of 50.85 feet; thence North 43 degrees 48'37" East along a line one foot offset to the wall line of said building for a distance of 36.90 feet; thence South 46 degrees 11'23" East along the centerline of a wall separating this unit from the adjoining unit for a distance of 50.85 feet; thence South 43 degrees 48'37" West along a line one foot offset to said building for a distance of 36.90 feet to the point of beginning, being known as 4127 Tonga Lane #1002, New Port Richey, Florida.

187.  The Galanoudes (4127 Tonga Lane #1002) Loan Documents are in default by virtue of Mr. Galanoudes' failure to pay the required monthly installment due on May 1, 2005, and all subsequent payments due thereafter.

188.  The Galanoudes (4127 Tonga Lane #1002) Loan Documents are also in default due to the application fraud as alleged herein.

189.  All conditions precedent to the acceleration of the debt and the commencement of this action have been fulfilled or waived.

190.  Lehman Brothers Bank and LBH have declared the full amount payable under the loan documents due, including attorneys' fees and costs for which Mr. Galanoudes is responsible.

191.  Mr. Galanoudes owes LBH as of the date of filing this complaint the following sums through October 31, 2006:

| | |
|---|---|
| Principal: | $ 435,500.00 |
| Interest: | $   47,002.67 |
| Escrows: | $     2,912.43 |
| BPO: | $        100.00 |
| **Total:** | **$ 485,515.10** |

In addition, interest will continue to accrue and other charges and advances may be incurred by LBH, including but not limited to additional loan servicing

49

expenses, attorneys' fees and litigation costs, for which Mr. Galanoudes is responsible. Mr. Galanoudes must contact William P. Heller, Esq. of Akerman Senterfitt at (954) 759-8945 to obtain updated payoff figures.

192.    Lehman Brothers Bank and LBH have retained counsel to prosecute foreclosure and are obligated to pay counsel reasonable fees for their services. Lehman Brothers Bank and LBH are contractually entitled to recover their attorneys' fees and litigation costs pursuant to the Galanoudes (4127 Tonga Lane #1002) Loan Documents.

193.    The following defendants may claim some interest in the property but any such interest would be subordinate and inferior to the right, title, interest and lien of LBH:

  a.    Unknown Tenants 61 through 75 of 4127 Tonga Lane #1002 by virtue of possession only.

  b.    Unknown Spouse of George Galanoudes by virtue of marital interest only.

  c.    Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the *Declaration of Covenants, Conditions and Restrictions* ["Declaration"], recorded in Official Records Book 4972, Page 563 and the first amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida. Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and Mr. Galanoudes. A copy of the

*Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

194.   SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including Mr. Galanoudes.   Lehman Brothers Bank and its assignee, LBH, have the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3E and in accordance with FLORIDA STATUTE § 697.07.   LBH demands that Mr. Galanoudes immediately turn over all rents in his possession or control. LBH further demands that SBCMA immediately pay over to LBH all rental program gross income due and outstanding or which may become due with respect to 4127 Tonga Lane #1002.

*Wherefore,* LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and taxable litigation costs, and that the defendants found responsible for same be ordered to pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the property to be sold by judicial sale.   LBH also respectfully requests the Court to retain jurisdiction in order to make any and all further orders and judgments as may be

51

necessary and proper, including (but not limited to) the issuance of a writ of possession and the award of a deficiency judgment.

### COUNT XIV
### FORECLOSURE
**Against Barry Rutstein**

195.   LBH realleges paragraphs 1 – 72.

196.   This count is to foreclose a mortgage on real property located in Pasco County, Florida.

197.   Barry M. Rutstein executed and delivered a Note and Mortgage in the principal amount of $549,750.00 on March 22, 2004.   The Note was given to Lehman Brothers Bank.   The Mortgage was given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted solely as Lehman Brothers Bank's nominee. Beneficial interest in the loan was retained by Lehman Brothers Bank.   True and correct copies of these loan documents are attached as Exhibits 2F and 3F, which shall be referred to collectively as the "Rutstein Loan Documents".

198.   An assignment of mortgage from MERS to Lehman Brothers Bank was executed on August 24, 2006.   This assignment transferred all of MERS's rights in the Mortgage to Lehman Brothers Bank.   A copy of this assignment is attached as Exhibit 4F.   On October 10, 2006, Lehman Brothers Bank executed an assignment of mortgage transferring its rights in the loan to LBH.   A copy of this assignment is attached as Exhibit 5F.   Through these assignments all rights under the Loan Documents have been transferred to LBH.

AKERMAN SENTERFITT

199.    LBH presently owns and holds the Rutstein Loan Documents, specifically

including the Note and Mortgage, and is duly authorized to bring this action.

200.    The Rutstein Loan Documents encumber the following described property owned

by Mr. Rutstein in Pasco County, Florida ("7314 Kauai Loop #1201"):

> A parcel of land lying in the Southwest ¼ of Section 15,
> Township 26 South, Range 16 East, Pasco County, Florida
> being more particularly described as follows:
>
> Commence at the South ¼ corner of Section 15, Township
> 26 South Range 16 East, Pasco County, Florida; thence
> North 00 degrees 09'32" East along the East line of the
> Southwest ¼ of Section 15 for a distance of 1344.07 feet;
> thence North 89 degrees 50'28" West departing said East
> line for a distance of 562.98 feet to the point of beginning;
> thence South 00 degrees 28'22" West along a line one foot
> offset to the wall line of a three story building for a distance
> of 36.90 feet; thence North 89 degrees 41'38" West along
> the centerline of a wall separating this unit from the
> adjoining unit for a distance of 50.85 feet; thence North 00
> degrees 18'22" East along a line one foot offset to the wall
> line of said building for a distance of 36.90 feet; thence
> South 89 degrees 41'38" East along the wall line of said
> building for a distance of 50.85 feet to the point of
> beginning.

201.    The Rutstein Loan Documents are in default by virtue of Mr. Rutstein's failure to

pay the required monthly installment due on January 1, 2005, and all subsequent

payments due thereafter.

202.    The Rutstein Loan Documents are also in default due to the application fraud as

alleged herein.

203.    All conditions precedent to the acceleration of the debt and the commencement of

this action have been fulfilled or waived.

AKERMAN SENTERFITT

204. Lehman Brothers Bank and LBH have declared the full amount payable under the loan documents due, including attorneys' fees and costs for which Mr. Rutstein is responsible.

205. Mr. Rutstein owes LBH of the date of filing this complaint the following sums through October 31, 2006:

| | |
|---|---|
| Principal: | $ 549,750.00 |
| Interest: | $  71,081.47 |
| Escrows: | $   5,261.31 |
| BPO: | $     100.00 |
| Property Inspection: | $      24.00 |
| **Total:** | **$ 626,216.78** |

In addition, interest will continue to accrue and other charges and advances may be incurred by LBH, including but not limited to additional loan servicing expenses, attorneys' fees and litigation costs, for which Mr. Rutstein is responsible.  Mr. Rutstein must contact William P. Heller, Esq. of Akerman Senterfitt at (954) 759-8945 to obtain updated payoff figures.

206. Lehman Brothers Bank and LBH have retained counsel to prosecute foreclosure and are obligated to pay counsel reasonable fees for their services.  Lehman Brothers Bank and LBH are contractually entitled to recover their attorneys' fees and litigation costs pursuant to the Rutstein Loan Documents.

207. The following defendants may claim some interest in the property but any such interest would be subordinate and inferior to the right, title, interest and lien of LBH:

   a. Unknown Tenants 76 through 90 of 7314 Kauai Loop #1201 by virtue of possession only.

54

    b.   Unknown Spouse of Barry Rutstein by virtue of marital interest only.

    c.   Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the *Declaration of Covenants, Conditions and Restrictions* ["Declaration"], recorded in Official Records Book 4972, Page 563 and the amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida. Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and Mr. Rutstein. A copy of the *Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

208.   SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including Mr. Rutstein. Lehman Brothers Bank and its assignee, LBH, have the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3F and in accordance with FLORIDA STATUTE § 697.07. LBH demands that Mr. Rutstein immediately turn over all rents in his possession or control. LBH further demands that SBCMA immediately pay over to LBH all rental program gross income due and outstanding or which may become due with respect to 7314 Kauai Loop #1201.

*Wherefore*, LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and

AKERMAN SENTERFITT

taxable litigation costs, and that the defendants found responsible for same be ordered to pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the property to be sold by judicial sale. LBH also respectfully requests the Court to retain jurisdiction in order to make any and all further orders and judgments as may be necessary and proper, including (but not limited to) the issuance of a writ of possession and the award of a deficiency judgment.

**COUNT XV**
**FORECLOSURE**
**Against Sohan Sahota (7245 Kauai Loop #1102)**

209.   LBH realleges paragraphs 1 – 72.

210.   This count is to foreclose a mortgage on real property located in Pasco County, Florida.

211.   Mr. Sahota executed and delivered a Note and Mortgage in the principal amount of $549,750.00 on March 22, 2004. The Note was given to Lehman Brothers Bank. The Mortgage was given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted solely as Lehman Brothers Bank's nominee. Beneficial interest in the loan was retained by Lehman Brothers Bank. True and correct copies of these loan documents are attached as Exhibits 2G and 3G, which shall be referred to collectively as the "Sahota (7245 Kauai Loop #1102) Loan Documents".

56

212.    An assignment of mortgage from MERS to Lehman Brothers Bank was executed on August 24, 2006. This assignment transferred all of MERS's rights in the Mortgage to Lehman Brothers Bank. A copy of this assignment is attached as Exhibit 4G. On October 10, 2006, Lehman Brothers Bank executed an assignment of mortgage transferring its rights in the loan to LBH. A copy of this assignment is attached as Exhibit 5G. Through these assignments all rights under the Loan Documents have been transferred to LBH.

213.    LBH presently owns and holds the Sahota (7245 Kauai Loop #1102) Loan Documents, specifically including the Note and Mortgage, and is duly authorized to bring this action.

214.    The Sahota (7245 Kauai Loop #1102) Loan Documents encumber the following described property owned by Mr. Sahota in Pasco County, Florida ("7245 Kauai Loop #1102"):

> A parcel of land lying in the Southwest ¼ of Section 15, Township 26, Range 16 East, Pasco County, Florida being more particularly described as follows:
>
> Commence at the South ¼ corner of Section 15, Township 26 South, Range 16 East, Pasco County, Florida; thence North 00 degrees 09 minutes 32 seconds East along the East line of the Southwest ¼ of Section 15 for a distance of 1877.52 feet; thence North 89 degrees 46 minutes 20 seconds West departing said East line, along the South Right of Way of Sharpsburg Boulevard for a distance of 551.24 feet; thence South 00 degrees 13 minutes 40 seconds West departing said South Right of Way for a distance of 754.97 feet to the Point of Beginning; thence South 00 degrees 20 minutes 08 seconds West along the wall line of a three story building for a distance of 50.85 feet; thence North 89 degrees 39 minutes 52 seconds West along a line one foot offset to the wall line of said building

AKERMAN SENTERFITT

for a distance of 36.90 feet; thence North 00 degrees 20 minutes 08 seconds East along the centerline of a wall separating this unit from the adjoining unit for a distance of 50.85 feet; thence South 89 degrees 39 minutes 52 seconds East along a line one foot offset to said building for a distance of 36.90 feet to the Point of Beginning.

215.    The Sahota (7245 Kauai Loop #1102) Loan Documents are in default by virtue of

Mr. Sahota's failure to pay the required monthly installment due on November 1,

2004, and all subsequent payments due thereafter.

216.    The Sahota (7245 Kauai Loop #1102) Loan Documents are also in default due to

his application fraud as alleged herein.

217.    All conditions precedent to the acceleration of the debt and the commencement of

this action have been fulfilled or waived.

218.    Lehman Brothers Bank and LBH have declared the full amount payable under the

loan documents due, including attorneys' fees and costs for which Mr. Sahota is

responsible.

219.    Mr. Sahota owes LBH as of the date of filing this complaint the following sums

through October 31, 2006:

| | |
|---|---|
| Principal: | $ 549,750.00 |
| Interest: | $ 65,819.41 |
| BPO: | $ 100.00 |
| Property Inspection: | $ 12.00 |
| **Total:** | **$ 615,681.41** |

In addition, interest will continue to accrue and other charges and advances may

be incurred by LBH, including but not limited to additional loan servicing

expenses, attorneys' fees and litigation costs, for which Mr. Sahota is responsible.

AKERMAN SENTERFITT

Mr. Sahota must contact William P. Heller, Esq. of Akerman Senterfitt at (954) 759-8945 to obtain updated payoff figures.

220. Lehman Brothers Bank and LBH have retained counsel to prosecute foreclosure and are obligated to pay counsel reasonable fees for their services. Lehman Brothers Bank and LBH are contractually entitled to recover their attorneys' fees and litigation costs pursuant to the Sahota (7245 Kauai Loop #1102) Loan Documents.

221. The following defendants may claim some interest in the property but any such interest would be subordinate and inferior to the right, title, interest and lien of LBH:

    a. Unknown Tenants 91 through 105 of 7245 Kauai Loop #1102 by virtue of possession only.

    b. Unknown Spouse of Sohan Sahota by virtue of marital interest only.

    c. Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the *Declaration of Covenants, Conditions and Restrictions* ["Declaration"], recorded in Official Records Book 4972, Page 563 and the first amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida. Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and Mr. Sahota. A copy of the *Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

222.   SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including Mr. Sahota.   Lehman Brothers Bank and its assignee, LBH, have the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3G and in accordance with FLORIDA STATUTE § 697.07.   LBH demands that Mr. Sahota immediately turn over all rents in his possession or control.   LBH further demands that SBCMA immediately pay over to LBH all rental program gross income due and outstanding or which may become due with respect to 7245 Kauai Loop #1102.

*Wherefore*, LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and taxable litigation costs, and that the defendants found responsible for same be ordered to pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the property to be sold by judicial sale.   LBH also respectfully requests the Court to retain jurisdiction in order to make any and all further orders and judgments as may be necessary and proper, including (but not limited to) the issuance of a writ of possession and the award of a deficiency judgment.

AKERMAN SENTERFITT

## COUNT XVI
## FORECLOSURE
### Against Sohan Sahota (7241 Kauai Loop #1103)

223.    LBH realleges paragraphs 1 – 72.

224.    This count is to foreclose a mortgage on real property located in Pasco County, Florida.

225.    Mr. Sahota executed and delivered a Note and Mortgage in the principal amount of $549,750.00 on March 22, 2004.  The Note was given to Lehman Brothers Bank.  The Mortgage was given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted solely as Lehman Brothers Bank's nominee.  Beneficial interest in the loan was retained by Lehman Brothers Bank.  True and correct copies of these loan documents are attached as Exhibits 2H and 3H, which shall be referred to collectively as the "Sahota (7241 Kauai Loop #1103) Loan Documents".

226.    An assignment of mortgage from MERS to Lehman Brothers Bank was executed on August 24, 2006.  This assignment transferred all of MERS's rights in the Mortgage to Lehman Brothers Bank.  A copy of this assignment is attached as Exhibit 4H.  On October 10, 2006, Lehman Brothers Bank executed an assignment of mortgage transferring its rights in the loan to LBH.  A copy of this assignment is attached as Exhibit 5H.  Through these assignments all rights under the Loan Documents have been transferred to LBH.

AKERMAN SENTERFITT

227.   LBH presently owns and holds the Sahota (7241 Kauai Loop #1103) Loan

Documents, specifically including the Note and Mortgage, and is duly authorized

to bring this action.

228.   The Sahota (7241 Kauai Loop #1103) Loan Documents encumber the following

described property owned by Mr. Sahota in Pasco County, Florida ("7241 Kauai

Loop #1103"):

> A parcel of land lying in the Southwest ¼ of Section 15,
> Township 26, Range 16 East, Pasco County, Florida being
> more particularly described as follows:
>
> Commence at the South ¼ corner of Section 15, Township
> 26 South, Range 16 East, Pasco County, Florida; thence
> North 00 degrees 09 minutes 32 seconds East along the
> East line of the Southwest ¼ of Section 15 for a distance of
> 1877.52 feet; thence North 89 degrees 46 minutes 20
> seconds West departing said East line, along the South
> Right of Way of Sharpsburg Boulevard for a distance of
> 498.29 feet; thence South 00 degrees 13 minutes 40
> seconds West departing said South Right of Way for a
> distance of 755.07 feet to the Point of Beginning; thence
> South 00 degrees 20 minutes 08 seconds West along a line
> one foot offset to the wall line of a three story building for
> a distance of 50.85 feet; thence North 89 degrees 39
> minutes 52 seconds West along a line on foot offset to the
> wall line of said building for a distance of 36.15 feet;
> thence North 00 degrees 20 minutes 08 seconds East along
> the wall line of said building for a distance of 50.85 feet;
> thence South 89 degrees 39 minutes 52 seconds East along
> a line one foot offset to said building for a distance of 38.15
> feet to the Point of Beginning.

229.   The Sahota (7241 Kauai Loop #1103) Loan Documents are in default by virtue of

Mr. Sahota's failure to pay the required monthly installment due on November 1,

2004, and all subsequent payments due thereafter.

230. The Sahota (7241 Kauai Loop #1103) Loan Documents are also in default due to the application fraud as alleged herein.

231. All conditions precedent to the acceleration of the debt and the commencement of this action have been fulfilled or waived.

232. Lehman Brothers Bank and LBH have declared the full amount payable under the loan documents due, including attorneys' fees and costs for which Mr. Sahota is responsible.

233. Mr. Sahota owes LBH as of the date of filing this complaint the following sums through October 31, 2006:

| Principal: | $ 549,750.00 |
| Interest: | $ 65,819.41 |
| BPO: | $ 100.00 |
| Property Inspection: | $ 12.00 |
| **Total:** | **$ 615,681.41** |

In addition, interest will continue to accrue and other charges and advances may be incurred by LBH, including but not limited to additional loan servicing expenses, attorneys' fees and litigation costs, for which Mr. Sahota is responsible. Mr. Sahota must contact William P. Heller, Esq. of Akerman Senterfitt at (954) 759-8945 to obtain updated payoff figures.

234. Lehman Brothers Bank and LBH have retained counsel to prosecute foreclosure and are obligated to pay counsel reasonable fees for their services. Lehman Brothers Bank and LBH are contractually entitled to recover their attorneys' fees and litigation costs pursuant to the Sahota (7241 Kauai Loop #1103) Loan Documents.

235.  The following defendants may claim some interest in the property but any such interest would be subordinate and inferior to the right, title, interest and lien of LBH:

    a.  Unknown Tenants 106 through 120 of 7241 Kauai Loop #1103 by virtue of possession only.

    b.  Unknown Spouse of Sohan Sahota by virtue of marital interest only.

    c.  Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the *Declaration of Covenants, Conditions and Restrictions* ["Declaration"], recorded in Official Records Book 4972, Page 563 and the first amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida.   Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and Mr. Sahota.   A copy of the *Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

236.  SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including Mr. Sahota.  Lehman Brothers Bank and its assignee, LBH, have the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3H and in accordance with FLORIDA STATUTE § 697.07.  LBH demands

that Mr. Sahota immediately turn over all rents in his possession or control. LBH further demands that SBCMA immediately pay over to LBH all rental program gross income due and outstanding or which may become due with respect to 7241 Kauai Loop #1103.

*Wherefore*, LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and taxable litigation costs, and that the defendants found responsible for same be ordered to pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the property to be sold by judicial sale. LBH also respectfully requests the Court to retain jurisdiction in order to make any and all further orders and judgments as may be necessary and proper, including (but not limited to) the issuance of a writ of possession and the award of a deficiency judgment.

## COUNT XVII
## FORECLOSURE
### Against Robert Smith

237.   LBH realleges paragraphs 1 – 72.

238.   This count is to foreclose a mortgage on real property located in Pasco County, Florida.

239.   Robert A. Smith, Trustee of the Robert A. Smith Trust dated June 9, 1995, executed and delivered a Note and Mortgage in the principal amount of $549,750.00 on April 29, 2004. The Note was given to Lehman Brothers Bank.

AKERMAN SENTERFITT

The Mortgage was given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which acted solely as Lehman Brothers Bank's nominee. Beneficial interest in the loan was retained by Lehman Brothers Bank. True and correct copies of these loan documents are attached as Exhibits 2I and 3I, which shall be referred to collectively as the "Smith Loan Documents".

240.   An assignment of mortgage from MERS to Lehman Brothers Bank was executed on August 24, 2006. This assignment transferred all of MERS's rights in the Mortgage to Lehman Brothers Bank. A copy of this assignment is attached as Exhibit 4I. On October 10, 2006, Lehman Brothers Bank executed an assignment of mortgage transferring its rights in the loan to LBH. A copy of this assignment is attached as Exhibit 5I. Through these assignments all rights under the Loan Documents have been transferred to LBH.

241.   LBH presently owns and holds the Smith Loan Documents, specifically including the Note and Mortgage, and is duly authorized to bring this action.

242.   The Smith Loan Documents encumber the following described property owned by Mr. Smith in Pasco County, Florida ("7242 Kauai Loop #600"):

A parcel of land lying in the Southwest ¼ of Section 15, Township 26 South, Range 16 East, Pasco County, Florida being more particularly described as follows:

Commence at the South ¼ corner of Section 15, Township 26 South Range 16 East, Pasco County, Florida; thence North 00 degrees 09'32" East along the East line of the Southwest ¼ of Section 15 for a distance of 1877.52 feet; thence North 89 degrees 46'20" West departing said East line, along the South right of way of Sharpsburg Boulevard, for a distance of 530.00 feet; thence South 00 degrees 13'40" West departing said South right of way, for a

66

distance of 603.97 feet to the point of beginning; thence South 89 degrees 39'31" East, along a line one foot offset to the wall line of a three story building, for a distance of 38.15 feet; thence South 00 degrees 20'29" West, along the wall line of said building, for a distance of 50.85 feet; thence North 89 degrees 39'31" West, along a line one foot offset to the wall line of said building, for a distance of 38.15; thence North 00 degrees 20'29" East, along a line one foot offset to said building, for a distance of 50.85 feet to the point of beginning.

243. Mr. Smith obtained a subordinate mortgage loan for $109,950 from Community Bank of Florida, secured by a mortgage recorded in Official Records Book 5869, Page 765 of the public records of Pasco County, Florida.

244. Failure to accurately and honestly disclose information on the mortgage application constitutes a default under section 8 of his mortgage, which provides that "Borrower shall be in default if, during the Loan application process, Borrower . . . gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan." (Ex. 3I.)

245. The Smith Loan Documents are in default by virtue of Mr. Smith's failure to disclose his subordinate mortgage financing on his mortgage application and his misrepresentation as to the amount of funds that he would pay at closing.

246. All conditions precedent to the acceleration of the debt and the commencement of this action have been fulfilled or waived.

247. Lehman Brothers Bank and LBH have declared the full amount payable under the loan documents due, including attorneys' fees and costs for which Mr. Smith is responsible.

248.  Mr. Smith owes LBH as of the date of filing this complaint the following sums

through October 31, 2006:

| | |
|---|---|
| Principal: | $ 532,594.43 |
| Interest: | $    5,069.07 |
| **Total:** | **$ 537,663.50** |

In addition, interest will continue to accrue and other charges and advances may

be incurred by LBH, including but not limited to additional loan servicing

expenses, attorneys' fees and litigation costs, for which Mr. Smith is responsible.

Mr. Smith must contact William P. Heller, Esq. of Akerman Senterfitt at (954)

759-8945 to obtain updated payoff figures.

249.  Lehman Brothers Bank and LBH have retained counsel to prosecute foreclosure

and are obligated to pay counsel reasonable fees for their services.  Lehman

Brothers Bank and LBH are contractually entitled to recover their attorneys' fees

and litigation costs pursuant to the Smith Loan Documents.

250.  The following defendants may claim some interest in the property but any such

interest would be subordinate and inferior to the right, title, interest and lien of

LBH:

  a.  Unknown Tenants 121 through 135 of 7242 Kauai Loop #600 by virtue of

possession only.

  b.  Unknown Spouse of Robert Smith by virtue of marital interest only.

  c.  Sunset Bay Club Members Association, Inc. ["SBCMA"], by virtue of the

*Declaration of Covenants, Conditions and Restrictions* ["Declaration"],

recorded in Official Records Book 4972, Page 563 and the first

amendment thereto recorded in Official Records Book 5233, Page 1176 of the public records of Pasco County, Florida.   Pursuant to Article II, Section 1 of the Declaration, SBCMA may claim a lien for outstanding assessments against the property and Mr. Smith.   A copy of the *Declaration of Covenants, Conditions and Restrictions* is attached as Exhibit 6.

251.   SBCMA maintains a rental program for the project in which rental program gross income from tenants occupying the units are pooled, utilized to pay common area maintenance costs of Sunset Bay, and then are distributed to unit owners, including Mr. Smith.   Lehman Brothers Bank and its assignee, LBH, have the right to receive all rent and rental income pursuant to the *1-4 Family Rider (Assignment of Rents)* attached to and incorporated into the Mortgage attached as Exhibit 3I and in accordance with FLORIDA STATUTE § 697.07.   LBH demands that Mr. Smith immediately turn over all rents in his possession or control.   LBH further demands that SBCMA immediately pay over to LBH all rental program gross income due and outstanding or which may become due with respect to 7242 Kauai Loop #600.

*Wherefore*, LBH respectfully requests the court to determine the amounts due and owing to LBH for principal and interest on the Mortgage and Note, attorneys' fees and taxable litigation costs, and that the defendants found responsible for same be ordered to pay LBH the amount found to be due; that in default of such payments, all right, title, interest, claim, demand or equity of redemption of defendants since the filing of the *lis*

*pendens* be barred and foreclosed; foreclose all interests inferior to LBH; and order the

property to be sold by judicial sale.  LBH also respectfully requests the Court to retain

jurisdiction in order to make any and all further orders and judgments as may be

necessary and proper, including (but not limited to) the issuance of a writ of possession

and the award of a deficiency judgment.

Date:  October 25, 2006

William P. Heller
Florida Bar No. 987263
William.Heller@Akerman.com
Blair C. Hedges
Florida Bar No. 17327
Blair.Hedges@Akerman.com

**AKERMAN SENTERFITT**
Las Olas Centre II
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
954-759-8945 Telephone
954-463-2224 Facsimile

70