UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEHMAN BROTHERS HOLDINGS, INC,

      Plaintiff,

      v.                                    Case No.: 8:06-cv-2030-T-24MSS

SCOTT HIROTA, et al.,

      Defendants.

_____/

## **ORDER**

This cause comes before the Court on the following motions: (1) a Motion to Dismiss filed by Interlachen Residential Mortgage Company, LLC (Doc. No. 86.); (2) a Motion to Dismiss and/or to Strike filed by Defendant Equitable Title of Florida, Inc. (Doc. No. 92); and (3) a Motion to Dismiss or Strike filed by Defendants LandAmerica Financial Group, Inc. and Lawyers Title Insurance Corporation (Doc. No. 87). Generally, these defendants seek dismissal of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure on the grounds that the claims lack particularity and are barred by the economic loss rule. Alternatively, the defendants move to strike particular allegations from Plaintiff's Amended Complaint as immaterial and impertinent, pursuant to Rule 12(f). Plaintiff Lehman Brothers Holdings, Inc. has filed a separate response in opposition to each of the motions. (Doc. Nos. 162, 163, 165.) For the reasons stated herein, the motions are granted in part and denied in part.

## I.      **Background**

This case involves an alleged mortgage fraud scheme in which Lehman Brothers Bank was induced to fund 13 residential mortgage loans totaling over $6.8 million based on materially false financial information, undisclosed second mortgages, and overvalued appraisals. This scheme to defraud left Plaintiff Lehman Brothers Holdings, Inc., the parent company of Lehman Brothers Bank and the assignee of the loans, with under-secured loans, causing Plaintiff millions of dollars in damages. In its 73-page Amended Complaint, Plaintiff asserts seven causes of action in tort and contract against the following: (1) the Borrower Defendants;[1] (2) the Appraiser Defendants;[2] (3) the Mortgage Broker Defendant;[3] (4) the Closing Agent Defendants;[4] and (5) the Title Company Defendant.[5]

Plaintiff alleges that its subsidiary, Lehman Brothers Bank, made 13 different mortgage loans to the various Borrower Defendants who purchased the mortgage properties, which are triplex apartment units, as investments. (Pl.'s Am. Compl. ¶ 28.) The Appraiser Defendants prepared appraisals of the properties at issue pursuant to contracts they had with Lehman Brothers Bank, and the Bank relied on those appraisals to issue the 13 loans. (*Id.* at ¶¶ 29-35.) The appraisals significantly overestimated the market value of the properties based on inflated

---

[1]The Borrower Defendants include: (1) Scott and Johanna Hirota; (2) Raul and Eloisa Quintana; (3) George Galanoudes; (4) Barry Rutstein; (5) Sohan Sahota; and (6) Robert Smith. In Counts VIII through XVII, Plaintiff also asserts foreclosure claims against the Borrower Defendants.

[2]The Appraiser Defendants are Fred Passarelli and his firm, Passarelli & Potts Appraisal Service, Inc.

[3]The Mortgage Broker Defendant is Interlachen Residential Mortgage Company.

[4]The Closing Agent Defendants are LandAmerica Financial Group, Inc. and Equitable Title of Florida, Inc.

[5]The Title Company Defendant is Lawyers Title Insurance Corporation.

comparables.  (*Id.*)  The Appraiser Defendants knew or should have known that the comparables were not representative of market value and that the Bank would rely on the appraisals in deciding whether to finance the transactions.  (*Id.*)

Each of the 13 closings was handled by the Closing Agent Defendants.  (*Id.* at ¶¶ 36-46.) Pursuant to the closing instructions that governed each transaction, the Closing Agent Defendants owed both contractual and fiduciary duties to Lehman Brothers Bank.  (*Id.*)  The Closing Agent Defendants breached those duties when they permitted secondary financing of the properties and failed to disclose the developer's excessive contributions to the closing costs. (*Id.*)  The Closing Agent Defendants were motivated to participate in this fraud by the prospect that they would receive additional business from the developer.  (*Id.*)

The Mortgage Broker Defendant brokered 11 of the 13 mortgage loans pursuant to a Brokerage Agreement with Lehman Brothers Bank.  (*Id.* at ¶¶ 47-56.)  Under that Agreement, the Mortgage Broker Defendant was obligated to repurchase the loans or otherwise indemnify the Bank for all damages resulting from the breach of the Agreement.  (*Id.*)  The Mortgage Broker Defendant breached the Broker Agreement by refusing to repurchase the loans.  (*Id.*)

The Borrower Defendants submitted mortgage applications to Lehman Brothers Bank that contained false and misleading statements and omissions, including the omission of the fact that they were using secondary financing to close on the loans and that the closing costs would be paid by the seller, not by the Borrower Defendants.  (*Id.* at ¶¶ 57-65.)  The Borrower Defendants knowingly made these misleading statements and omissions to induce the Bank to fund their mortgage loans.  (*Id.*)

The Title Company Defendant provided title insurance to Lehman Brothers Bank on all 13 transactions pursuant to closing protection letters.  (*Id.* at ¶¶ 66-72.)  The Title Company Defendant failed to comply with the written closing instructions as they relate to the status of the titles at issue and by not reimbursing the Bank for actual losses incurred.  (*Id.*)  Furthermore, the Title Company Defendant committed fraud in handling the closings.  (*Id.*)

**II.     Discussion**

The Mortgage Broker Defendant, the Closing Agent Defendants, and the Title Company Defendant now move for dismissal of Counts I, II, III, IV, VI, and VII of the Amended Complaint under the economic loss rule and for failure to state a claim and for dismissal of Counts I and VII for lack of particularity.  The Closing Agent Defendants and the Title Company Defendant also move to strike immaterial and impertinent allegations from the contract claims in Counts IV and V.

**A.     Motion to Dismiss under Rule 12(b)(6)**

Pursuant to Florida law, the economic loss rule provides that "parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of [the] breach of contract."  *Jones v. Childers*, 18 F. 3d 899, 904 (11th Cir. 1994) (citations and quotations omitted).  The rule "is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Indemnity Ins. Co. of N. Amer. v. Amer. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).  A party to a contract who attempts to circumvent the contract by asserting a claim for economic loss in tort "is, in effect, seeking to obtain a better bargain than originally

made." *Id.*  Therefore, "contract principles are more appropriate than tort principles to resolve purely economic claims." *Id.*

        **1.**        **Counts I: Fraud, II: Negligent Misrepresentation, and III: Negligence**

In Counts I and II, Plaintiff sues all the defendants for fraud and negligent misrepresentation on the grounds that the defendants knowingly made material false statements to induce Lehman Brothers Bank to fund the loans and that the Bank justifiably relied on those statements to its detriment.  (*Id.* at ¶¶ 73-85.)  In Count III, Plaintiff sues all the defendants for negligence on the grounds that they breached their duty of care to Lehman Brothers Bank by providing false statements and failing to disclose material information, which caused the Bank damages.  (*Id.* at ¶¶ 86-90.)

Defendants argue that the economic loss rule bars these claims because the parties already negotiated the allocation of economic risks and losses when they entered into the Brokerage Agreement and the closing instruction contracts and letters.  The Bank then assigned its rights under those contracts to Plaintiff, thus placing Plaintiff in direct privity of contract with Defendants.  They argue that Plaintiff should not be permitted to better its bargain by converting its breach of contract claims into tort claims for fraud, negligent misrepresentation, and negligence.

Plaintiff argues that the economic loss rule has been expressly limited by the Florida Supreme Court such that fraud and negligent misrepresentation claims are not barred by the rule.  Plaintiff further argues that its negligence claim arises out of its fraud and negligent misrepresentation claims, and is therefore exempt from the economic loss rule, because the false statements that defendants allegedly made involved the same subject matter as the fraud.

Finally, Plaintiff argues that the rule is inapplicable here because in its tort claims it alleges not that the defendants failed to perform the contracts at issue, but rather that the defendants induced Plaintiff to enter into the contracts through fraud and negligent misrepresentation.

The Florida Supreme Court "expressly limited" the economic loss rule in *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 543 (Fla. 2004), and recognized that certain exceptions to the rule, including claims for fraudulent inducement and negligent misrepresentation, still apply.  However, in that case, the Court made it clear that "when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." *Id.* at 542.   The test to determine whether a fraud claim is independent from a contract claim depends on the performance of the contract.  *HTP, Ltd. v. Linease Aereas Costarricenses*, 685 So. 2d 1238, 1239-40 (Fla. 1996).  Fraud is an independent tort if it "occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract, i.e., whether the defendant was truthful during the formation of the contract is unrelated to the events giving rise to the breach of the contract." *Id.* (quotations and citations omitted).  On the other hand, if the fraud or misrepresentations relate to the breaching party's performance of the contract, they do not give rise to an independent tort action, and the economic loss rule bars the claim.  *Id.*

The Court concludes that Plaintiff's tort claims are substantively indistinguishable from its breach of contract claims, and therefore, are barred by the economic loss rule.  The harm it allegedly suffered is the same in both its contract and tort claims.  Plaintiff alleges in every claim that the defendants were wrong in permitting the Borrower Defendants to close on loans using

secondary financing and seller concessions in breach of the contracts it had with the defendants. These allegations relate directly to the performance of the contract and are "inextricably intertwined" with the breach of contract claims. *Behrman v. Allstate Life Ins. Co.*, 388 F. Supp. 2d 1346, 1350 (S.D. Fla. 2005). "[W]here the only alleged misrepresentation concerns the heart of the parties' agreement, simply [labeling the claim as a tort claim] will not suffice to subvert the sound policy rationales underlying the economic loss doctrine." *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77 (Fla. 3rd DCA 1997). Accordingly, Counts I, II, and III of Plaintiff's Amended Complaint for fraud, negligent misrepresentation, and negligence are dismissed as to Defendants Interlachen Residential Mortgage Company, LLC, Equitable Title of Florida, Inc., LandAmerica Financial Group, Inc., and Lawyers Title Insurance Corporation.[6] Because the Court has already concluded that Count I is due to be dismissed against these defendants under the economic loss rule, the Court need not consider the defendants' alternative argument for dismissal of Count I under Rule 9(b) for lack of particularity.

## 2.    Count VI: Breach of Fiduciary Duty

In Count VI, Plaintiff sues the Appraiser Defendants and the Closing Agent Defendants for breach of fiduciary duty on the grounds that they manufactured and provided overvalued appraisals and fraudulent settlement statements to Lehman Brothers Bank knowing that the Bank would rely on those appraisals and settlement statements to determine the value of the mortgage

---

[6]In a footnote to its argument, Plaintiff briefly requests that the Court permit it to amend its pleadings if the Court finds any of its pleadings deficient. (Doc. No. 163, p.7 n.3.) That request is denied without prejudice. If Plaintiff wants to amend its Amended Complaint, Plaintiff may file a motion for leave to amend and attach the proposed Second Amended Complaint. However, it appears to the Court that amending Counts I, II, III, VI, and VII would be futile.

loans.  (*Id.* at ¶¶ 111-116.)  Plaintiff alleges that these defendants assumed a duty to advise and protect the Bank in these mortgage transactions by providing their professional services in return for a fee.

Defendants argue that this claim is based on the same conduct that forms the basis of the contract claims, and therefore, is barred by the economic loss rule.  The Court agrees.  The Court specifically rejects Plaintiff's reliance on *Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, Case No. 2:97-cv-416, 2000 WL 33992234, at *9 (M.D. Fla. Mar. 31, 2000), an earlier case decided by this Court, for the proposition that its breach of fiduciary duty claim is exempt from the economic loss rule.  In *Pacific Harbor Capital, Inc.*, this Court ruled that the economic loss rule did not bar the plaintiff's breach of fiduciary duty claims.  *Id.* at *32-33.  In reaching this conclusion, however, the Court specifically reasoned that it was obligated to follow a case from Florida's Third District Court of Appeal, *Invo Florida, Inc. v. Somerset Venturer, Inc.*, 751 So. 2d 1263 (Fla. 3d DCA 2000), in the "[a]bsen[ce] [of] a Florida Supreme Court decision on point."  *Id.* at *32.  Since that decision, the Florida Supreme Court issued *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004), as described above. Although the Florida Supreme Court discussed breach of fiduciary duty in *Indemnity Insurance Co.*, it declined to list that tort as an exception to the economic loss rule.  *Id.*

Furthermore, the Eleventh Circuit Court of Appeals explicitly followed *Indemnity Insurance* when affirming the dismissal of an insurance company's tort actions for negligence, breach of fiduciary duty, fraud, deceit, and misrepresentation against its insured based upon the economic loss rule.  *Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc.*, 184 Fed. Appx. 894 (11th Cir. 2006).  In *Royal Surplus*, the insurance company sued to recoup settlement funds it

had paid after it discovered that the insured had withheld critical information from the insurance company that resulted in the insurance company's overpayment to settle claims of third parties against the insured.  *Id.* at 895.  In addition to its tort claims, the insurance company also asserted a contract claim based on the insured's breach of the cooperation clause contained in the insurance contract.  *Id.* at 896.  In addressing the propriety of the district court's ruling that the tort claims were barred, the *Royal Surplus* court relied on the Florida Supreme Court's *Indemnity Insurance* decision and stated that there, the court "made it clear that the economic loss rule does apply 'where the parties are in contractual privity and one seeks to recover damages in tort for matters arising from the contract.'" *Id.* at 902 (quoting *Indemnity Ins. Co.*, 891 So. 2d at 536). The court then concluded that the tort claims were based on the same conduct that provided the basis for the breach of contract claim (i.e., that the insured concealed damaging information from it).  *Id.*  Accordingly, all of the tort claims, including the breach of fiduciary duty claim, were barred by the economic loss rule.  *Id.*

Like in *Royal Surplus*, Plaintiff's breach of fiduciary duty claim is based on the same conduct that provides the basis of its breach of contract claim and is therefore barred by the economic loss rule.  Plaintiff alleges that the Closing Agent Defendants breached their fiduciary duties by preparing inaccurate appraisals and fraudulent settlement statements on which Lehman Brothers Bank relied to its detriment.  (Pl.'s Am. Compl. at ¶¶ 111-116.)  Plaintiff alleges that the Closing Agent Defendants accepted this fiduciary duty "by signing the closing instructions." (*Id.* at ¶ 39.)  Similarly, in its breach of contract claims, Plaintiff alleges that these defendants "breached the [closing instruction] contracts."  (*Id.* at ¶ 97.)   Plaintiff has failed to demonstrate how the two claims differ, and in fact, even concedes that its fiduciary duty claims are partially

based on the closing instructions.  Accordingly, Count VI of Plaintiff's Amended Complaint for breach of fiduciary duty is dismissed as to Defendants Equitable Title of Florida, Inc. and LandAmerica Financial Group, Inc.

### 3.    Count VII: Civil Conspiracy

In Count VII, Plaintiff sues all the defendants for civil conspiracy, alleging that they conspired to fraudulently induce Lehman Brothers Bank to fund mortgage loans for the purchase of the properties at issue.  (Pl.'s Am. Compl. at ¶¶ 117-120.)  Plaintiff alleges that the defendants provided fraudulent information on their mortgage applications, failed to disclose the use of secondary financing, failed to disclose the excessive contributions towards closing costs from the developer, and "breached their contractual and fiduciary duties at the closing," all in furtherance of the conspiracy.  (*Id.* at ¶ 119.)

Defendants argue that Plaintiff's civil conspiracy claim is barred by the economic loss rule because it is nothing more than an additional, duplicate theory of recovery and is inextricably intertwined with the breach of contract claims.  Furthermore, they argue that Florida law does not recognize an independent action for conspiracy, and because Plaintiff cannot sustain any of its underlying tort claims, the civil conspiracy claim necessarily fails.

The Court agrees that the civil conspiracy claim must be dismissed for those reasons. Plaintiff's civil conspiracy claim is based on the same alleged conduct–providing fraudulent information and failing to disclose secondary financing and developer contributions–that forms the basis of its breach of contract claims.  The economic loss rule, therefore, bars this claim. Furthermore, notwithstanding the economic loss rule, the claim fails because "Florida does not recognize an independent action for civil conspiracy."  *Behrman*, 388 F. Supp. 2d at 1353

(quotations and citations omitted).  In Florida, a fraud claim that is found not to be actionable cannot serve as the basis for a conspiracy to defraud claim.  *Id.*  Because the Court has already found that none of Plaintiff's other tort claims can proceed against these defendants, Plaintiff's civil conspiracy claim necessarily fails as a matter of law.  *See id.*  Accordingly, Count VII of Plaintiff's Amended Complaint for civil conspiracy is dismissed as to Defendants Interlachen Residential Mortgage Company, LLC, Equitable Title of Florida, Inc., LandAmerica Financial Group, Inc., and Lawyers Title Insurance Corporation.  Because the Court has already concluded that Count VII is due to be dismissed against these defendants under the economic loss rule, the Court need not consider the defendants' alternative argument for dismissal of Count VII under Rule 9(b) for lack of particularity.

### 4.      Count IV: Breach of Contract

In Count IV, Plaintiff brings a separate breach of contract action against the Borrower Defendants, the Mortgage Broker Defendant, the Closing Agent Defendants, and the Title Company Defendant.  (*Id.* at ¶¶ 91-102.)  In particular, Plaintiff alleges that Lehman Brothers Bank entered into contracts with each of these defendants in the form of a Brokerage Agreement and closing instructions and letters, that the defendants breached these contracts, and that Plaintiff suffered damages as a result of the breaches of the contracts.  (*Id.*)

Defendant Interlachen Residential Mortgage Company argues that Plaintiff has failed to state a claim for breach of the Brokerage Agreement because it did not allege that Interlachen had knowledge of any wrongdoing and made only conclusory allegations that Interlachen knew of, or should have known of, wrongdoing.  Defendant Equitable Title of Florida, Inc. argues that

Plaintiff's contract claim against it must be dismissed because Plaintiff failed to specify which contracts it believes Equitable Title breached.

Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently alleged facts to support its breach of contract claims against these defendants.  In order for a breach of contract claim to survive a Rule 12(b)(6) motion, a plaintiff must allege the existence of a valid contract, a material breach, and damages.  *Butterworth v. Quick & Reilly*, 998 F. Supp. 1404, 1410 (M.D. Fla. 1998).  With regard to each defendant, Plaintiff has sufficiently identified and pled that a contract was formed, that the defendants breached those contracts, and that the breach caused Plaintiff damages.  The Court rejects Defendant Interlachen's argument that Plaintiff's failure to allege that it had knowledge of any wrongdoing is fatal to its claim because Interlachen's knowledge is irrelevant at this time.  The standard on a 12(b)(6) motion is not whether the plaintiff may ultimately prevail on its theory, "but whether allegations are sufficient to allow [the plaintiff] to conduct discovery in an attempt to prove [its] allegations." *Jackson v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986). Whether Plaintiff can ultimately prove that the defendants breached these contracts is an issue for the trier of fact or that can be raised in a motion for summary judgment.  Accordingly, the Motions to Dismiss Count IV as to Defendants Interlachen Residential Mortgage Company and Equitable Title of Florida, Inc. are denied, and those claims are still pending.

###    B.    Motions to Strike under Rule 12(f)

Defendants LandAmerica Financial Group, Inc., Lawyers Title Insurance Corporation, and Equitable Title of Florida, Inc. also move to strike allegations in Counts IV and V under

Rule 12(f) as immaterial and impertinent.  These defendants argue that Plaintiff has lumped multiple claims for breaches of multiple, but different contracts it has with various different defendants into a single breach of contract count and a single breach of third party beneficiary rights count.  Defendants argue that Plaintiff's allegations against other defendants are immaterial and impertinent to whether Defendants LandAmerica Financial Group, Inc., Lawyers Title Insurance Corporation, and Equitable Title of Florida, Inc. have breached their contracts.  As such, they argue that all immaterial and impertinent allegations contained in Counts IV and V should be stricken.

Rule 12(f) permits the Court to order that "any redundant, immaterial, impertinent, or scandalous matter" be stricken from a pleading.  However, "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1347(M.D. Fla. 1999).  Furthermore, Rule 8(a) provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 103, 78 S. Ct. 99 (1957).

In Counts IV and V, Plaintiff alleges that it entered into various contracts with these defendants, that the contracts were breached, and that the breach caused Plaintiff damages.  These allegations adequately provide the defendants with sufficient notice of the nature of the contract claims, and the defendants have failed to demonstrate how they have been prejudiced by the manner in which Plaintiff asserted these claims.  Therefore, viewing these counts in light of

the notice pleading standard of Rule 8(a), the Court declines to strike Counts IV and V under Rule 12(f), and the Motions to Strike are denied.

## III.    Conclusion

Accordingly, the Motions to Dismiss and/or Strike Plaintiff's Amended Complaint (Doc. Nos. 86, 87, 92) are **GRANTED IN PART and DENIED IN PART**.  The defendants' Motions to Dismiss Counts I, II, III, VI, VII under Rule 12(b)(6) and the economic loss rule are **GRANTED**, and those claims are dismissed as to Defendants Interlachen Residential Mortgage Company, LLC, Equitable Title of Florida, Inc., LandAmerica Financial Group, Inc., and Lawyers Title Insurance Corporation.  The defendants' Motions to Dismiss Counts I and VII under Rule 9(b) for lack of particularity are **DENIED AS MOOT**.  The defendants' Motions to Dismiss Count IV under Rule 12(b)(6) are **DENIED**.  The defendants' Motions to Strike Counts IV and V under Rule 12(f) are **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 21st day of May, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record

14